STEPHENSON *VS.* PRIMROSE.

1. By the law merchant, the endorser of a promissory note stipulates with the endorsee, and each subsequent holder, in the ordinary course of business, that if demand of payment is made by the maker at its maturity, and due notice of the nonpayment given to him,—he, *himself,* will pay the note.

2. No precise form of notice is required,—it may be verbal or in writing :

3. And where the parties all reside in the same city, it is necessary in order to fix the endorser's liability, that he be personally informed of the dishonor of the note, either verbally or in writing : or a notice should be left at his dwelling house or place of business.

4. Therefore, where the holder, within proper time after the dishonor of the note, leaves a verbal or written notice, at the endorser's counting room or place of doing business, but it is not shewn to have been left during *the hours of business,* all the parties residing in the same city,—such notice would not be sufficient.

5. But if the party entitled to notice, absent himself from his place of business *during the hours of business,* without leaving any one to attend to his interest,—the holder will be excused from giving notice *there.*

6. But if the endorser · has used the precaution to obtain an assignment of all the effects of the drawer or maker, to be applied to the payment of the paper endorsed, he cannot claim an exemption from liability, because he has not had regular notice of the dishonor of the bill or note.

7. So, if he has protected himself by taking collateral security, *sufficient,* to cover the endorsement, he impliedly waives his legal right to notice.

8. Though, to this rule, there might be an exception.

9. A room to which a man is accustomed to resort, but in which it is not shewn, that he carries on any regular trade or employment, cannot be considered his *place of business.*

10. And if the holder of paper call at a room thus resorted to, for the purpose of giving notice to its occupant of the dishonor of a note endorsed by him, at a time when he is absent :—the holder is not excused from giving notice : especially where the endorser has a dwelling house and livery stables within the same city, the latter of which, he personally superintends.

Error to the County court of Mobile.

Assumpsit on a promissory note.

This action was brought by the holder against an endorser, who pleaded the general issue, and a verdict was rendered, and judgment entered up against the defendant.

On the trial of the case, the plaintiff proved the note, endorsement and protest. B. Stanton, one of the firm of Labuzan & Stanton, who were the last endorsers on the note, was then produced, on the part of the plaintiff, who proved that he anticipated the non-payment of the note, some days before its maturity, and in order to be able to fix the liability of defendant, he enquired where Stephenson's place of business was, and was informed that it was in an upper room in a house in the city of Mobile. On the day the note was protested, he called twice at the room designated, and enquired for defendant, with a view of giving him notice—he found no one but a servant, who giving an equivocal answer, he put the note in the post office. He also left a notice at the room in question.

Another witness proved, that the room in question was the defendant's place of business, but that defendant

Stephenson *vs.* Primrose.

had a dwelling house in the city, where he then resided, and also kept a livery stable, which he superintended himself.

Plaintiff then read in evidence, a deed made by one White, the maker of the note, conveying the property for which the note was given, to defendant, as an indemnity against the note—The property, however, only sold for one thousand dollars.

The court charged the jury, that the law made it necessary, in order to bind an endorser, that he should have notice, and if residing in the city, a verbal notice, or notice in writing, left at his residence, counting room, or place of business, on the same day, or day after the protest. If they were satisfied from the evidence, that defendant in this case had such notice, they would find for the plaintiff; or if defendant had secured himself by taking a deed of trust on the property or effects of the maker of the note, they might find for plaintiff, although defendant had no notice of protest, &c. But if the indemnity was insufficient, proof of demand and notice was indispensable. Exceptions were taken by defendant to the charge.

Plaintiff in error assigned—

1. That evidence was admitted which was inadmissible;

2. That the chage of the court was incorrect in point of law.

*Campbell*, for plaintiff in error.

COLLIER, C. J.—The points made at the argument arise out of the bill of exceptions, and present these questions:

First.—Is the omission to give notice to an endorser, of the non-payment of a promissory note, excused by proof, that the holder, within the proper time after its dishonor, *left a written or verbal notice* at the endorser's counting-room, or place of doing business, where all the parties reside in the same city?

Second.—If an endorser has secured himself by a mortgage or lien on the property of the maker, does he thereby waive his right to notice of a demand and refusal?

Third.—Can a room to which a man is accustomed to resort, but in which it is not shown, that he carries on *any regular trade or employment*, be considered his *place of business*—and if the holder of paper call at a room thus resorted to, for the purpose of giving notice to its occupant of the dishonor of a note, endorsed by him, at a time when he is absent, is the holder excused from giving notice; especially where it appears that the endorser has a dwelling house and livery stables within the same city, the latter of which he personally superintends?

First.—Every endorsement of a promissory note, constitutes in itself a new and substantive contract. According to the law merchant, the endorser stipulates with the endorsee, and each subsequent holder, (in the ordinary course of business,) that if a demand of payment is made of the maker at its maturity, and due notice of the non-payment to given him, then, he *himself* will pay the note. The undertaking of the endorser is conditional: contemplating some act to be done on the part of the holder; and before his liability becomes absolute, it must be shewn, either that a performance of the condition

was prevented by some act of the party entitled to claim its benefit, or that he has waived the necessity of performing it.

No precise form is required in giving notice to an endorser. Its object is to inform him of the failure of the maker to meet his engagement with promptness, and to advise him that he will be looked to, for payment, in order that he may take measures for his indemnity; and any means of communicating this information, whether verbally or in writing, will be sufficient—(Shed vs. Brett, 1 Pick. Rep. 401; Mills vs. the Bank of the United States, 11 Wheat. Rep. 431; Reedy vs. Seixas, 2 Johns. Cases, 337; Smith vs. Whiting, 12 Mass. R. 6; Cowles vs. Harts, 3 Conn. Rep. 516; Solarte vs. Palmer, 7 Bingh. Rep. 629.)

In the case before us, the note was made payable at the Bank of Mobile. The parties both resided in that city, so that according to a well established rule, it was necessary in order to fix the endorser's liability, that he should have been personally informed of the dishonor of the note, either verbally or in writing; or a notice should have been left at his dwelling house, or place of business. Either mode would have been sufficient, but one or the other was essential, unless the plaintiff, by his own act, prevented it—(Williams vs. the Bank of the United States, 2 Pet. Rep. 96; Ireland vs. Kip, 10 Johns. Rep. 490; 11 ibid. 231; Bank of Columbia vs. Lawrence, 1 Pet. Rep. 578; Smedes vs. the Utica Bank, 20 Johns. Rep. 372; 3 Kent's Com. and cases there cited.) It is not pretended that a personal notice was given to the plaintiff, but only that a room in the city (understood

Stephenson *vs.* Primrose.

by the holder to be his place of business,) was twice visited for the purpose of giving him notice of the dishonor of the note—that he was not in the room at either of these visits, nor was any one else, but a servant, who, to the witness' enquiries, returned an equivocal answer. The holder made no farther effort to find the plaintiff, but deposited a written notice in the post office, for him. Conceding that the place at which the plaintiff was sought, was his place of business, and still we think the effort to give notice was insufficient.    It is indispensable to the holder's right of recovery, to prove that the endorser has been duly advised of the default of the maker; or to shew a sufficient excuse for the failure to give him notice.    Now, to make the excuse available, it should have been shown, not only that the witness called at the plaintiff's place of business, but it should appear further, that the visit was made at a seasonable time—viz. *within the hours of business.*    *Then,* it may be supposed that he should be there in person, or if absent, that his clerks, or others, were there, to receive and communicate a notice to him; but when the hour for relaxation, or rather the period for the suspension of business shall have arrived, the man of business should be sought rather at his dwelling house, than elsewhere.

In Shed vs. Brett and Trustees, (1 Pick. Rep. 413,) a notary public testified, that when the note became due, he went with it, at the request of the endorsee, to the place of business of the promisors, and found it closed, no person being there, of whom he could make a demand. It was objected, that the testimony did not prove a demand, nor a sufficient excuse for it.    The court consid-

Stephenson vs. Primrose.

ered, that what was done was sufficient, if the witness could state that he went to the place of business of the makers, in business hours, but unless he could state this fact, the demand was not excused, and the endorser was not liable.

In Crosse vs. Smith and others, (1 M. & S. 545,) an effort was made to give notice to the drawers, of the non-payment of a bill of exchange, by sending it to their counting-house during hours of business, on two successive days, knocking there, and making sufficient noise to be heard by persons within, and waiting there several minutes—the inner-door being locked. This was considered sufficient, without leaving a written notice, or sending it by the post.

And in Goldsmith and others vs. Bland and others, (Bailey on Bills, 127, or late ed. 224, note 1,) with the view of charging the defendants as the endorsers of two foreign bills, and to prove notice, it was shown by the plaintiffs, that they sent a clerk to the defendant's counting-house, between four and five o'clock in the evening —nobody was in—the clerk saw a servant girl, who said no one was there, and he returned, having left no message with her. Lord Eldon, who presided on the circuit, told the jury, that if they thought the defendant ought to have had somebody in the counting-house at the time, he was of opinion that the plaintiffs had done all that was necessary, by sending their clerk—that the notice was in law sufficient, if the time was regular, &c. The learned Lord doubtless intended to refer to them the question of fact, whether the call was made at the defendant's counting-house, within business hours, and no-

8 P. 21

thing more; for this fact being found affirmatively, the law determined the sufficiency of the excuse to give notice.

Goldsmith and others vs. Bland others, says Mr. Justice Washington, (2 Peters' Rep. 101,) decides "that it was sufficient to send a verbal notice to the defendant's counting-house, and if no person be there in the ordinary hours of business to receive it, it is not necessary to leave or send a written one. "The principle of this decision is," says that learned judge, " that the counting-house of the defendant, is the place in which the holder was entitled, during the regular hours of business, to look for the person for whom the notice was intended, or for some one authorised by him to receive it"—(See further, Bowes vs. Howe, 5 Taunt. R. 30; 4 T. R. 456; 1 B. & Pul. 394.)

This, we think, authority ample to show that a drawer or endorser of a bill or note, may be sought within the regular time after the dishonor of either, at their places of business, for the purpose of giving them a notice, and if absent during *the hours of business,* without leaving any one to attend to their interest, the holder will be excused from giving notice. In the case before us, it does not appear that either of the visits to the room in which the plaintiffs carried on business, was made within business hours, and as the excuse for omitting to give notice was incomplete, without proof of that additional fact, the judge of the County court, in not thus qualifying his instructions to the jury on this point, mistook the law.

Second.—If an endorser has used the precaution to *ob-*

tain an assignment of all the effects of the drawer or maker, to be applied to the payment of the paper endorsed, he cannot claim an exemption from liability, because he has not had regular notice of the dishonor of the bill or note. The reason why he is entitled to notice is, that he may take the necessary measures to obtain payment from the parties liable to him, and if notice be not given, it is a presumption of law, that he is prejudiced by the omission; but if the endorser has already obtained a transfer of the entire estate of the drawer or maker, he would have nothing to gain by a notice, and consequently, could not be injured by the want of it. So, if the endorser has protected himself from loss, by taking collateral security *sufficient* to cover his endorsement, he has impliedly waived his legal right to require proof of demand and notice. We do not undertake to determine, that this latter proposition is universally true: be this as it may, it will be time enough to enquire whether it has its exceptions, when a proper case shall arise.

As the effect of an assignment of property, or a collateral security, upon the general rights of an endorser, is for the first time brought before this court, it may not be out of place to enquire how the question stands upon authority. Corney vs. Da Costa, (1 Esp. R. 302,) is the earliest case that has fallen under our notice. In that case, it appears that the defendant was sued as the endorser of a promissory note. To secure him against the makers default, he had taken of their effects, an amount equal in value to the note. Mr. Justice Buller said it was undoubtedly true, that an endorser should have notice of

the dishonor of a note, but that was not the case, where he could not suffer from the want of it.   The maker had waived his right to insist upon a notice, and was liable at all events.   In Brown vs. Maffey, (15 East's R. 222,) Mr. Justice Bayley cites Corney vs. Da Costa, and says it was decided upon the ground, that it " would have been a fraud in the endorser, to call upon the maker, because, before it became due, the maker had deposited effects in his hands, to answer the amount of his endorsement, and therefore, he had no right to complain of the want of notice."

Bond and others vs. Farnham, (5 Mass. R. 170,) was a case in which the plaintiff, to obviate the necessity of notice to the endorser, proved, that before the note was payable, the maker had assigned *all* his property to the defendant, for his security against his endorsement. The court considered, that notice was not essential to the plaintiff's right of recovery, and say, " The case most analagous to this, is, where a drawer of a bill had no effects in the drawee's hands.   He cannot insist upon a demand upon the drawee, for he could not expect an acceptance, and he suffers no injury by the want of it. The endorser of a note resembles the drawer of a bill. Although once having effects, as he had a demand on the maker, yet he has afterwards withdrawn from the maker all his property, to enable himself to meet his own endorsement, and had not, when the bill was payable, any remedy, unless, perhaps, the miserable one of seizing the body of a man worth nothing."   In Barton vs. Baker, (1 Serg. & Rawle's R. 334,) the court cite, with approbation, Bond and others vs. Farnham, and thought

it not unreasonable to presume, that an endorser, situated as was the defendant in that case, took upon himself to provide for the paper endorsed by him.    This question was also considered in the Mechanics' Bank of New York vs. Griswold, (7 Wend. Rep. 165,) and the conclusion attained, that where an endorser is *amply* indemnified by the maker, or where he has taken an assignment of *all* his effects to meet his responsibility, he cannot resist a recovery by insisting on the want of notice.

Prentiss vs. Danielson, (5 Conn. Rep. 176,) was a case in which the maker of a note had conveyed certain property to the endorser, to indemnify himself against his liabilities and endorsements on account of the maker ;— the property conveyed was an insufficient security.    The court held, that if an endorser receives security to meet a particular endorsement, he waives a demand and notice in respect to that endorsement, but not as to any other. · But inasmuch as the defendant was implicated for the maker to the full amount of the property conveyed, aside from the note in question, and as his liability growing out of the endorsement of the note was extinguished, before the security was given, the conveyance of the property for his indemnity, did not have the effect of reviving it.    And in Tower vs. Durell, (9 Mass. R. 332,) the principle decided in Bond and others vs. Farnham, is recognised; but the court determine, that where an endorser of a promissory note, believes a demand to have been duly made on the maker, and that notice has been duly given to himself, and believing himself therefore liable, takes measures for his indemnity, this will not excuse the holder from proving a regular demand and notice.

The last case we shall notice, is Mead vs. Small, (2 Greenl. R. 207.) In that case, the endorser had taken a mortgage on real estate, which was a *sufficient* security for the amount of the note endorsed—The court decided that "if the endorser has protected himself from eventual loss by his own act, in taking security from the ma_ ker, such conduct must be considered as a waiver of the legal right to require proof of demand and notice. And we are of opinion accordingly, that the facts before us clearly shew such a waiver in the present case."

The court also said, that the facts presented a stronger case for the plaintiff, than Bond and others vs. Farnham. There, the property pledged was not a *sufficient* indemnity, but it was *all* the maker had—while in the case before them, the security was ample—(See also Chitty on Bills, 203; 3 Kent's Com. 79.)

The inferences deducible from the cases cited, are—

1. Where an endorser, before the maturity of the note, obtains an assignment of *all* the maker's property to meet his responsibility, he impliedly waives his right to insist on a demand of payment, and notice of non-payment.

2. Where the endorser receives of the maker a collateral security, whether by mortgage or otherwise, to indemnify him against the consequences of his endorsement, if the security be *sufficient*, the maker's default will fix the endorser's liability, without the previous steps of a demand and notice. The judge of the County court stated the law to the jury as we have laid it down in our second inference, so that the verdict could not have been influenced by any consideration growing out of

Stephenson *vs.* Primrose.

the deed of trust; for it clearly appears, that the property covered by the deed was far from being an adequate indemnity.

3. The term ".business," in common parlance, means that *employment which occupies the time, attention and labor.* That which a man occasionally engages in, as opportunity offers, or inclination prompts, is, for the time being, his business; yet, so far as the question we are examining is concerned, the law uses that term, to indicate a regular and legal employment—not one that is *occasional, irregular or illegal.* And a *place of business* must be understood to be a place actually occupied, either continually or at regular periods, by a person or his clerks, or those in his employment. If business is transacted there sometimes, but at no stated periods, the occupant, his clerks, &c., cannot be supposed to be there at any other time to receive notice of the dishonor of paper. To make a room a place of business, in contemplation of law, the employment must be of a nature not criminal. Thus, a place at which a *band of freebooters* are accustomed regularly to assemble to divide their *unholy thrift,* or at which the *gambler* statedly exhibits his *arts,* to allure the idle and incautious, cannot be regarded as their places of business: for their employments being denounced as criminal, the law will not presume that they should be at the places, at which they are carried on, when they are absent; and consequently, does not consider an ineffectual effort to give them notice there, equivalent to personal notice.

It was shown at the trial, that the only business pursued by the plaintiff, was that of keeping a livery stable

Stephenson *vs.* Primrose.

at another part of the city, than that, at which, the room he was sought, was situated—that he superintended it in person, and was frequently there. It also appeared, that the plaintiff had a dwelling house in the city, where he resided, and though he might often be found at the *room*, there was no proof that he carried on any particular business there. These facts clearly show that the *room* was not used by the plaintiff for any *regular business*, but his *place of business* was his livery stable; and either there or at his dwelling house, should he have been sought. We deem it unnecessary to determine, whether the instruction moved upon this point should have been given, considering the terms in which it was asked : as the judgment must be reversed upon the first ground, the plaintiff, should it become necessary upon a second trial, can modify his motion for instructions, in conformity with the law, as we have ascertained it.

Judgment reversed, and cause remanded.