

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN

XXXXXXXXXXXXXXXXXXXXXX

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable A. E. Wood, Chairman
Game, Fish & Oyster Commission
Austin, Texas

Dear Sir:

Opinion No. 0-1596
Re: Must a Wholesale Fish Dealer have
a license for each receiving sta-
tion under Article 934a, Penal
Code, 1925 as amended.

We are pleased to reply to the request made by you
in your letter of October 18, 1939, wherein you say:

"Before any person in this State shall engage
in the business of a '. . . Wholesale Fish Dealer'
he shall first procure from the Game, Fish & Oyster
Commission a license authorizing him to engage in
this business. Under Section 3 of the amended Act
it is provided:

"'. . . 2. Wholesale Fish Dealer's
License, fee for each place of business,
Two Hundred Dollars ($200.00).'

"The pertinent part of Paragraph 11 of Section
3 of the amended Act is as follows:

"'11. Place of business, as used
in this Act, shall include the place
where orders for aquatic products are
received, or where aquatic products
are sold. . . .'

"We have some fish dealers on the Texas Coast
with headquarters in Corpus Christi. They are
wholesale dealers within the purvue of the above
Act. We likewise have Wholesale Fish Dealers
with headquarters in Rockport and other places on
the Texas Coast. Each dealer purchases a Whole-
sale Fish Dealer's License and have it displayed
in their place of business at their headquarters.
Each dealer has what he calls receiving stations
up and down the coast. Some of these receiving
stations are at Port Isabel, a distance of one

hundred and fifty miles from Corpus Christi.  At
these receiving stations they do not have license
displayed.  In fact they have no Wholesale Fish
Dealer's License for this place of business.  They
ship fish from said receiving stations to points
over the State.  The fish are not always transport-
ed from the receiving station to the headquarters
place of business for shipment but are shipped di-
rect from the receiving station to the retail deal-
er in different sections of the State.  The orders
are first received at their headquarters and re-
layed or transmitted from headquarters to the re-
ceiving station and shipped from the receiving
station, as above outlined.  Some of these dealers
purchase fish from independent fishermen and the
fish thus purchased are delivered to the so-called
receiving stations.

"We would like for you to advise us if the re-
ceiving station is a place of business as defined
in Paragraph 11 of Section 3 of the above Act.  Is
it a place where orders for aquatic products are
received?"

Under the facts given us in your letter, it is our
opinion that the receiving station is a place of business as
defined in Paragraph 11 of Section 3 of the above Act, which
is Paragraph 11 of Section 3, Article 934a of Vernon's Penal
Code, 1925, as amended 1934.

In arriving at this conclusion, it was necessary for
us to give particular attention to the history of these sta-
tutes.  On October 16, 1933, House Bill No. 81 (General and
Special Laws of Texas, Forty-third Legislature, First Called
Session, 1933, page 85) was approved and became effective
ninety days after adjournment.  This Bill provided, in part,
on page 86:

"Sec. 3.  The licenses and the fees to be
paid for the same, are hereby provided for in
this Act and are as follows:

"1.  Commercial Fisherman License, fee Three
Dollars ($3.00).

"2.  Wholesale Fish Dealer License, fee Two
Hundred Dollars ($200.00).

"3.  (a)  Retail Fish Dealer License, fee
Three Dollars ($3.00) in any city or town of less
than five thousand (5,000) population.

"(b)  Retail Fish Dealer License, fee Ten Dollars ($10.00) in any city or town of not less than five thousand (5,000) and not more than forty thousand (40,000) population.

"(c)  Retail Fish Dealer License, fee Twenty Dollars ($20.00) in any city or town of more than forty thousand (40,000) population.

"4.  Bait Dealer License, fee Two Dollars ($2.00)."

. . . . "

In each of the above quoted subsections of Section 3, provision was made only for the payment of a certain fee for a particular license.  No provision was made for the payment of a fee for each place of business.  For instance, subsection 2 of Section 3, provided, "Wholesale Fish Dealer License, fee Two Hundred Dollars ($200.00)", and did not provide, "Wholesale Fish Dealer License, fee for each place of business, Two Hundred Dollars ($200.00)".  Thus, under this statute of 1933, it would seem that a wholesaler would have been required to pay only one fee, regardless of the number of places of business which he might have, and this was indicated by the court in the case of Ex parte Mehlman (Ct. Crim. App. 1934), 75 S.W. (2d) 689.  In this case the court said, on page 692:

"It is shown in the statement of facts before us that in the city of Dallas there are systems of chain stores.  For example, the owner of one system operates a number of places of business in the city.  He pays one annual tax for a license to retail fish, and carries on the business in each of his several stores.  The facts further show that relator owns one place of business.  Upon this situation the contention is predicated that the act is discriminatory.  Relator is not inhibited by the act from operating as many stores in the city of Dallas as he desires under a single retail fish dealer's license.  As far as the law is concerned, every retail dealer within a given city is accorded equal privileges.  It is true that the owners of a system of chain stores in a city might do a greater volume of business than the owner of a single store.  However, this might obtain as between two proprietors each owning a single store."  (Italics ours)

We would call particular attention to the fact that this case was decided on June 13, 1934.  After this case was

handed down, and on September 26, 1934, House Bill No. 31 (General and Special Laws of Texas, Forty-third Legislature, Third Called Session, 1934, page 83, which is Article 934a, Vernon's Penal Code of Texas, 1925, as amended 1934), was approved, and under the emergency clause, became effective as of this date. This bill, which was passed subsequent to the decision of the Texas Court of Criminal Appeals in the case of Ex parte Mehlman, provides, in part:

"Section 1. That Section 3 of House Bill No. 81, Chapter 29, Acts First Called Session, Forty-third Legislature, be and the same is hereby amended so as to hereafter read as follows:

"'Section 3. The licenses and the fees to be paid for the same are hereby provided for in this Act and are as follows:

"'1. Commercial Fisherman's License, fee Three Dollars ($3.00).

"'2. Wholesale Fish Dealer's License, fee for each place of business, Two Hundred Dollars ($200.00). (Italics ours)

"'3. (a) Retail Fish Dealers' License, fee Three Dollars ($3.00) for each place of business in each city or town of less than seven thousand five hundred (7,500) population.

"'(b) Retail Fish Dealers' License, fee Ten Dollars ($10.00) for each place of business in each city or town of not less than seven thousand five hundred (7,500) and not more than forty thousand (40,000) population.

. . . . . .'"

As pointed out, House Bill No. 81, supra, did not provide that a fee should be paid for each place of business, and under the above-mentioned bill it was possible for a chain of stores, within a city, to pay only one fee regardless of the number of stores operated. This, likewise, would have been true under the above mentioned bill, in regard to its operation as to wholesalers, because Section 2 of House Bill No. 81 provided, "Wholesale Fish Dealer License, fee Two Hundred Dollars ($200.00)", and did not include the provision, "for each place of business".

The Legislature, approximately three months after the decision in Ex parte Mehlman, amended House Bill No. 81 so as to make the pertinent subdivisions include the phrase, "for each place of business" (House Bill No. 31, General and Special Laws of Texas, Forty-third Legislature, Third Called Session, 1934; Article 934a, Vernon's Penal Code, 1925, as amended 1934). The legislative intent was to require a license to be obtained and a fee paid for each place of business, and this legislative intent is indicated in the emergency clause (Section 3 of House Bill No. 31, General and Special Laws of Texas, Forty-third Legislature, Third Called Session, 1934, at page 84), which provides:

> "The fact that the present law does not require a separate fish dealer's license for each place of business operated by a fish dealer, and the further fact that chain stores under the existing law may operate any number of stores throughout Texas by paying one (1) wholesale fish dealer's license, and the fact that such a condition works to the benefit of the chain store, and the further fact that the failure of such original Act to provide for the posting of such license in each place of business, renders the enforcement of the Act difficult, create an emergency and an imperative public necessity authorizing the suspension of the Constitutional Rule requiring bills to be read on three several days in each House, and said Rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."

It is true that, in the case of Ex parte Mehlman, the court was concerned only with retail chain stores; however, the Legislature, in its amendment, did not limit its action to retail stores, but in subsection 2 of Section 3 of House Bill No. 81, supra, provided that wholesalers must pay a fee "for each place of business."

It was, then, the manifest intention of the Legislature to require Wholesale Fish Dealers to pay a fee for each place of business. Since this was the clear intent of the Legislature, we must "construe the statute so as to give effect to the purpose of the Legislature" (39 Texas Jurisprudence, p. 169, sec. 90); and since this legislative intent is ascertained, it "must be given effect if it is legally possible to do so" (39 Texas Jurisprudence, p. 171, sec. 90).

With these last rules of statutory construction in

mind, we turn to the definition of "place of business" as set out in subsection 11 of Section 3 of House Bill No. 31, supra, which provides in part:

> "Place of business as used in this Act, shall _include_ the place where orders for aquatic products are received, or where aquatic products are sold, and if sold from a vehicle, the vehicle on which, or from which such aquatic products are sold, shall constitute a place of business. ." (Italics ours)

By this definition, a "place of business" is not limited to a place "where orders for aquatic products are received or where aquatic products are sold." The word "include" in its usual and ordinary meaning is a word of enlargement and not a word of limita tion. This construction is substantiated by the late case of Peerless Carbon Black Co. vs. Sheppard, et al (Ct. Civ. App. 1938), 113 S.W. (2d) 996. In that case a statute imposed an occupation tax on "every person in this state manufacturing or producing carbon black" and provided "(f) The term 'carbon black' as herein used _includes_ all black pigment produced in whole or in part from natural gas, casinghead gas, or residue gas by the impinging of a flame upon a channel disk or plate, and the tax herein imposed shall reach all products produced in such mannner." (Italics ours)

The appellant company manufactured carbon black by a fourth method, not specifically provided for by paragraph (f) of the statute, supra, and paid the tax under protest. They brought suit to recover such taxes, contending that they were exempt because the statute did not specifically mention their method of manufacturing carbon black.

In holding for the appellee the court said, on page 997:

> "'The word "includes" is not, ordinarily, a word of limitation, but rather of enlargement.' Fraser vs. Bentel, 161 Cal. 390, 119 P. 509, 511, Ann. Cas. 1913B, 1062. . . . In 31 C. J. 395, ∤ 3C, it is said that while the word 'including' is susceptible of different shades of meaning, 'it is generally employed as a term of enlargement and not a term of limitation, or enumeration.' The cases cited from numerous jurisdictions sustain this text. . . ."

Since we follow the case of Peerless Carbon Black Co.

vs. Sheppard, supra, a "place of business" as defined in sub-section 11 of Section 3 of House Bill No. 31, supra, is not limited to a place "where orders for aquatice products are received or where aquatic products are sold", but includes any place which is a "place of business".

The case of Stephenson vs. Primrose (Alabama 1838), 8 Porter 155, 33 Am. Dec. 381, holds on page 287:

"The term 'business', in common parlance, means that employment which occupies the time, attention, and labor. . . . . And a place of business must be understood to be a place actually occupied, either continually or at regular periods, by a person or his clerks, or those in his employment. . . . ."

In the case of Terry Dairy Co. vs. Parker (Sup. Ct. Ark. 1920), 223 S. W. 6, the facts were:

The Dairy Company had its domicile and principal of-fice and place of business in Little Rock, Arkansas. They also had a frame building at Hazen, in Prairie County, on which was painted "Terry Dairy No. 3". "It was appellant's receiving station." (Italics ours) It was the duty of the attendant at the "receiving station" to receive the milk sent in to the station by the farmers. He was not paid to solicit anything. "He was to weigh up the farmers' milk, put it in cans, and ship it to appellant at Little Rock. . . .". It was the duty of the attendant at the receiving station to operate a cooling unit at the station, and to receive milk brought to the station, but he had nothing to do with fixing the price; the farmers would write to the appellant at Little Rock asking what they were going to pay. In holding that this receiving station was a "place of business", and there-fore that service on the agent was valid service on the ap-pellant, the court said:

"The facts of the present case show that the appellant was maintaining at the town of Hazen a place where it was conducting a well-defined lines of its business. The appellant, as its name implies, is engaged in a business in which a supply of milk is indispensable. For its convenience it had a building on the railroad equipped with machinery, which it des-ignated as its plant No. 3. This building had in it a desk which the agent in charge used in making daily reports of the business. The agent was employed on a salary. The building was

equipped with the necessary machinery for cool-
ing the milk, and the business of the company
was that of obtaining from the farmers in that
locality a supply of milk to be shipped to its
principal place of business at  Little  Rock.
The building was duly equipped and appointed,
and the agent was supplied with the necessary
material for successfully conducting that part
of appellant's business."

After ascertaining that the manifest intention of the
Legislature was to require wholesale fish dealers to pay a fee
for each place of business, and, since  the  word  "include",
under the authorities, is not a word of limitation or enumera-
tion but rather one of enlargement, under the usual and ordi-
nary meaning of the phrase "place of business" (and in line
with the cases of Stephenson vs. Primrose, supra, and Terry
Dairy Company vs. Parker, supra), we are of the opinion that
the receiving stations of the Wholesale Fish Dealers, which
you describe in your letter of October 18, 1939, are places
of business within the purview of the House Bill No. 31, Gen-
eral and Special Laws of Texas, Forty-third Legislature, Third
Called Session, 1934; Vernon's Penal Code, 1925, Article 934a,
as amended 1934.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/Walter R. Koch
Walter R. Koch
Assistant

By s/Harry Shuford
Harry Shuford

HS:GO:wc


APPROVED NOV 17, 1939
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman