J. W. WHEELER & COMPANY *v.* FITZPATRICK.

Opinion delivered July 1, 1918.

1. INDEPENDENT CONTRACTOR—PERSONAL INJURIES.—Appellee sustained injuries through the alleged negligence of one L. while rafting logs. Appellee was employed by L., but L. was working for appellants. Appellee brought his action for damages against appellants. *Held,* under the evidence that the trial court properly refused to instruct the jury that as a matter of law L. was an independent contractor, the evidence being sufficient to warrant a finding that L. was an agent or servant of appellants.

2. INDEPENDENT CONTRACTOR—DEFENSE OF—PERSONAL INJURY ACTION.—In a personal injury action the defendant claimed that the person under whom plaintiff was working when he was injured, was an independent contractor. *Held,* the finding of the jury that the person was not an independent contractor would not be disturbed on appeal, there being evidence of a substantial character to sustain the verdict; the rule being that it is for the court, as a matter of law, to define the relationship, and for the jury to make a finding of the fact as to its existence.

3. EVIDENCE—PERSONAL INJURIES—INDEPENDENT CONTRACTOR—STATEMENTS OF THE LATTER.—L. was employed by appellants, and appellee, while working under L. sustained personal injuries, and sued both appellants and L. for resulting damages. Appellants sought to escape liability on the ground that L. was an independent contractor. L.'s testimony tended to sustain this plea. *Held,* evidence of a statement by L. out of court, that he had no contract with appellants, was admissible, in the cases of both L. and appellants.

4. DAMAGES—AMOUNT—PERMANENT INJURIES.—In a personal injury action a verdict of $11,285 *held* not excessive, where plaintiff through hard work, mostly with timber, had been earning $2.50 and $3.00 per day, and where his injury reduced his earning capacity to $1 a day, where the injury was to the vertebrae of the neck and spine and skull, and a fracture of the spine, and the injuries sustained were permanent.

Appeal from Cross Circuit Court, First Division; *W. J. Driver,* Judge; affirmed.

*Hughes & Hughes,* for appellants.

1. The undisputed testimony is that Lane was an independent contractor. Appellee was Lane's employee and appellants were not liable for Lane's negligence or that of his employees. 53 Ark. 503; 54 *Id.* 209; 54 *Id.* 424; 55 *Id.* 510; 77 *Id.* 551; 81 *Id.* 195; 111 *Id.* 486; 118 *Id.* 561; 60 S. E. 654; 58 N. H. 52; 30 Atl. 346; 62 S. E. 436; 1 K. B. 851; 124 Pac. 844; 146 N. W. 241; 1 Sweeney (N. Y.) 545; 65 L. R. A. 445-467 M. 469 Q; 17 L. R. A. (N. S.) 375.

2. The court erred in its instructions. Cases *supra.* Also in refusing requests asked by appellants. 14 R. C. L., § 3; 178 Mass. 1.

3. The verdict is excessive and grossly so. The extent of the injuries was grossly exaggerated.

*S. W. Dugan* and *Chas. T. Coleman,* for appellee.

1. Lane was not an independent contractor but an agent or servant of the appellants. The testimony amply shows this.

2. There is no error in the instructions given or refused. 109 Fed. 732; 154 N. C. 147; 124 Pac. 38; 81 Kan. 765; 76 Mich. 139; 95 Iowa 497; 38 Mont. 341; 23 Tex. Civ. App. 12; 84 Kan. 797; 116 S. W. 320; 1 Thompson on Negl., § 629; 7 *Id.,* § 659; 8 *Id.,* § 659; 124 Pac. 38; 86 Kan. 774; 64 W. Va. 278; 95 Iowa 497.

3. The verdict is not excessive considering the pain and suffering, his diminished earning capacity, expectancy of life, etc.

WOOD, J. Appellant is a partnership, engaged in the manufacture of hardwood lumber.

Appellee brought this action against the appellant and also against George Lane for damages for personal injuries. He alleged that he was in the employ of the appellant and engaged in the work of rafting logs in the St. Francis River; that Lane was the agent of the appellant and that appellee at the time of his injury was under the supervision and direction of appellant's agent, Lane.

The complaint sets forth the acts of negligence which it is alleged caused the injury.

The appellant answered and denied these alleged acts of negligence, and denied that the appellee was in its employ at the time of his injury. It denied that Lane was its agent at any time for any purpose. It admitted that it was the owner of the logs which were being moved at the time the appellee was injured, and alleged that Lane had contracted with it as an independent contractor to raft logs, for whose acts it was in no wise responsible. Appellant set up the defense of contributory negligence and assumed risk on the part of the appellee. There was a verdict in favor of the appellee against the appellant, and also against Lane, in the sum of $11,285. From a judgment in favor of the appellee for that sum appellant brings this appeal.

The only issues presented here are whether or not Lane was an independent contractor and whether or not the verdict was excessive. It is only necessary, therefore, to state the facts bearing on these issues.

The appellee testified that he was hired by Lane to raft timber. Lane was working for Wheeler, who was the foreman.

Another witness testified that he was working at the log raft in which appellee was hurt. He was working for Lane and Lane was working for Wheeler as he understood. Lane was in charge of the work and discharged witness from employment.

Another witness testified that he was working at another camp near by where appellee was hurt and shortly afterwards saw the broken cable. Lane told witness that they did not get good stuff up on that job and they sent worn out stuff up there for them to use. Witness had worked for Lane. About one week before he had inquired at the office of Wheeler & Co. and Wheeler told him to go to Lane and he would hire him. Witness went down there and Lane told witness that he would take him if it was all right with Wheeler, then Lane hired witness and Wheeler paid him. He sent the money to

pay witness by Mr. Lane. Lane went down to Madison after the pay and carried witness' time and got the money. Wheeler never gave witness any money, but he held out witness' pay one time. Witness may have owed Wheeler a little at the time.

Another witness testified that he was at Lane's camp shortly after the accident and Lane showed him the cable that broke. It was an old rotten cable. Lane said it was one they had sent him from the farm that had been used on a stump puller, that Wheeler had sent him. Witness testified that Wheeler came to his place one morning and requested witness to go and help Lane raft timber. Witness told Wheeler he did not want to interfere with Lane's work unless satisfactory with Lane. Wheeler replied that it did not matter a damn whether it was satisfactory with Lane or not, that it was his timber and that he wanted to get it out, that the water was falling.

Another witness testified that in the spring of 1915 he was working on the river for Mr. Wheeler. He worked on the same job that Lane worked on. The river was falling and he helped Lane raft some of the timber that was left there. Mr. Wheeler got him to go up there. Wheeler employed him and paid him for his work and witness did not ask Lane anything about going to work on the job. Witness was paid for his work by the thousand.

Another witness testified to the same effect. The above is substantially the testimony on behalf of the appellee on the issue as to whether or not Lane was an independent contractor.

On behalf of the appellant, C. L. Wheeler testified, that he was one of the partners and had the management of the mill and the outside business. About September 1, 1915, he received a letter from Lane in regard to work. He answered the letter on the 10th making Lane a proposition and he received from him the following letter:

"Will drop you a few lines in answer to yours of the 29th. Will say that I can do the rafting if we can agree on a deal, though I am not able to fit up to do the work by contract, without you would help me. I would have to have a team of some kind to put the logs in the water with, and a house boat, tools, in fact everything most. If you wouldn't want to do that, I would take the job on a salary if that would suit you any better. Would like to do your work if we can agree on a deal at all. You let me hear soon as you can just the best you can do, either way. So I can figure on it. I have several offers to raft but would be out of work soon as the river got down. I would like to have some work all the year if you can fix me up, so will close hoping to hear from you soon."

Wheeler answered the above letter as follows:

"Your letter received and will say that I will give you $1.00 per M. for rafting the oak, and 75c for elm, ash, cypress and gum. The oak is to have two binders and be out of good elm, pecan or oak. The elm and cypress can have only one binder when rafted by itself. May not have enough floaters to carry all of the oak and will have to use float boats. Will pay $1.00 for loading this, same as if rafted. There should be about three million feet and if this suits you, come down and commence building your houseboat. We will furnish you the lumber and tools and take a mortgage on the boat. The binders that you use are to be bored.

"I think that you can make some money out of this job as it will last two or three years, and you should have a boat so you could board your men right on the job. There is a log team and wagon here that we can buy. If this suits you come at once and we will get busy, as water is coming up."

The lumber and tools in the letter referred to lumber and tools for the house boat. Lane accepted appellant's proposition and in a few days came down and went to work and continued to work for about two years under that contract and was operating under it when appellee

was hurt. Witness never made any other contract with Lane. Lane bought a house boat. Appellant sent him money on his rafting contract as the work progressed at so much per thousand feet. Lane paid his own men and bought his own supplies. Appellant would sometimes take supplies to him as it went up after the logs. Appellant loaned Lane a pull boat. Lane supplied the tools for it and kept it in repair. Witness stopped once when the boat was out of repair to see what was the matter with it, but did not undertake to control; supervise, or direct Lane on the job of rafting. Lane ran the job himself. Lane hired the men and discharged them and paid them for their work.

Witness was asked if on one occasion he did not go up there and tell Lane the work was getting along too slow and that witness wanted him to put on another crew. Witness replied that he might have done so.

Wheeler further testified that it did not furnish Lane cable after he took the pull boat. Appellant paid Lane $1 per thousand oak and 75 cents on soft wood as he rafted it. Witness did not know the appellee until after he was hurt and did not know that he was at work on the job. Witness stated that he employed others to assist Lane in putting the logs in the river. But this was done with Lane's consent in order to get the logs in the water before it went down. Witness stated that the letters referred to constituted a written contract with Lane. He had no other contract with him. Lane accepted witness' proposition, but his acceptance was not in writing. Under the contract Lane was to raft about 3,000,000 feet of logs. It was to be done during the rafting season. Witness testified that nearly all of this kind of work was done by the thousand, and the contract that he had with Lane was the same kind that he made with all of his men for this kind of work. Witness testified that it was Lane's practice to notify appellant's office about how much money he would need to meet his pay roll and appellant would send him what he asked for. Witness did not know what men he had on his pay roll.

The testimony of Lane substantially corroborated in all material particulars the testimony of Wheeler. Witness Lane identified what purported to be a statement of his account kept by appellant showing the number of feet of logs that he had rafted and showing that appellant had paid him for the same, at so much per thousand feet.

The testimony of Wheeler and Lane on direct examination was to the effect that everything furnished Lane except the pull boat and its equipment was purchased by Lane, but on cross-examination Lane testified that appellant furnished him money with which to buy certain mules.

Lane was asked if he ever paid for them and answered that he turned a couple of the mules back, and got one of them drowned, and that appellant did not charge him anything for the one that was drowned and the mules that he returned appellant sold to other parties.

The testimony shows that when appellee was injured he was in a boat on the water raising a log to be rafted. That appellee's injury was caused by the breaking of the pull cable which Lane had fastened. It was an old looking piece of cable, showed rust, and some of the wires had been worn and broken.

At appellant's request the jury were required to answer whether or not George Lane was an independent contractor, and they answered that he was not.

Learned counsel for the appellant correctly state the effect of our own and other authorities to be, "That where the defendant lets out work to a contractor and the work is not in itself unlawful and intrinsically dangerous and no negligence is committed in the selection of the contractor, and the company only exercises control over the work to the extent of general supervision and inspection to the end that it may determine whether the work is being done according to requirements and specifications of the contract, but has no other control over the work nor the power to choose, direct and discharge the employees of the contractor, the defendant is not liable

for injuries due to negligence of the contractor or his servants, the relation of master and servant not existing between them and the defendant." *St. Louis, I. M. & S. Ry. Co.* v. *Gillihan,* 77 Ark. 551, 553; *White River Ry. Co.* v. *B. & W. Tel. Co.,* 81 Ark. 195, 200; *Ark. Land & Lumber Co.* v. *Secrist,* 118 Ark. 561. See also other cases in appellant's brief.

Says Judge Elliott: "An independent contractor may be defined as one who, in the course of an independent occupation, prosecutes and directs the work himself using his own methods to accomplish it, and represents the will of the company only as to the result of his work." 2 Elliott on Railroads, p. 863, § 1063.

"An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work." 2 Words & Phrases, p. 1034, and many other cases there cited.

(1) This is in accord with the definition given by Judge Elliott and quoted by this court in *Railway Co.* v. *Gillihan, supra.* Applying the definition to the facts of this record, there was no error in the ruling of the court in refusing to grant appellant's prayer for instruction telling the jury that under the uncontradicted evidence Lane was an independent contractor.

The testimony was sufficient to warrant the jury in finding that the relation which Lane sustained to the appellant was that of an agent or servant rather than that of an independent contractor.

(2) It could serve no useful purpose to discuss the evidence in detail. It is set forth in the statement and speaks for itself. It proves circumstances that were proper for a jury to consider on the issue as to whether or not Lane was an independent contractor. Though we may differ with the jury as to the correctness of its conclusion, the issue here is not what we think the verdict of the jury should have been but whether or not there was

substantial evidence to sustain the verdict as rendered. *St. L. & S. F. R. Co.* v. *Kilpatrick*, 67 Ark. 47-62.

Applying the above rule, it can not be said there was no evidence of a substantial character to sustain the verdict.

"The expression, 'an independent contractor,' within the popular understanding which the words import, is wholly descriptive. The expression serves merely to point out one of a class, and when so used it may be conceded that no words of definition are needed. But in the law of negligence the expression is used, not merely in a descriptive sense, but as well to designate a relationship, in the presence of which, when established, the law undertakes to prescribe distinctive rights and liabilities. It is for the court, then, as a matter of law, to define the relationship, and for the jury to make finding of the fact as to its existence." *Overhouser* v. *Am. Cereal Co.*, 128 Iowa, 580.

Appellant's prayers for instruction invaded the province of the jury, and the court did not err in refusing them. Some of these prayers assumed that certain facts had been proved which were in dispute and told the jury that such facts constituted Lane an independent contractor.

Other prayers told the jury that if certain facts were proved such facts did not make Lane a servant of the appellant.

All these instructions were erroneous. They did not ask the court to define the relation and leave the jury to say as to whether or not under the evidence that relation existed.

Appellant contends that the contract between Lane and itself was in the form of a letter written by Wheeler, containing the terms on which he would have Lane do the work, and that Lane accepted these terms. The court in its instruction No. 6 told the jury that if it found such to be the case to render a verdict in favor of Wheeler & Co. No written acceptance by Lane of the terms of the letter of appellant was shown, and the verdict and the spe-

cial finding of the jury on the interrogatory propounded show that the jury found that the letter did not evidence the contract which was orally entered into between them.

The instructions given by the court on its own motion submitting the issue as to whether or not Lane was an independent contractor were as favorable to appellant as it had the right to ask, and fully covered appellant's contention.

The following are instructions Nos. 6 and 7 given by the court on its own motion:

(6) You are instructed that if you find from the evidence that Wheeler & Co. employed Lane to raft the logs at a fixed price per thousand feet, and that the letter in evidence was the contract accepted by Lane, and that the work was done by Lane under that contract substantially, then defendant, J. W. Wheeler & Co., is not liable, notwithstanding the fact that the plaintiff was injured, and notwithstanding the fact that the use of the wire cable around the stump was an act of negligence, if you should so find.

(7) You are instructed that the fact that Wheeler loaned the pull boat and cable to Lane is not enough to render J. W. Wheeler & Co. liable, and if they are not liable under the instructions as stated to you, they would not be liable on account of loaning the boat and its equipment to Lane.

Appellant contends that the court erred in refusing, among others, the following instruction: ''The jury are instructed that even if Lane stated out of court that he had no contract, the effect of that evidence must be confined to Lane's case, and that evidence is not to be considered by the jury on the question of the liability of Wheeler & Co.''

(3) The court did not err in refusing this prayer for the reason that Lane was a witness as well as a defendant. When he was on the witness stand appellant did not object to his testimony on the ground that no foundation had been laid for his impeachment, but on the contrary permitted his testimony to go to the jury as if such foundation had been laid. Since the testimony tend-

ing to prove Lane's contradictory statements went to the jury without objection from appellant, it was not in an attitude to ask that Lane's statement out of court "that he had no contract" be confined to Lane's case. Such statement was contradictory of his testimony and tended to impeach Lane. He was a very material witness. His credibility was for the jury, and it had a right to consider this testimony in determining the issue of liability not only of Lane but also of appellant.

(4) The appellant contends that the verdict was excessive. The appellee testified that at the time of his injury he was earning from $2.50 to $3 per day. Appellee was forty-six years old, and his expectancy as shown by the evidence was twenty-two years. The testimony of the physician showed that the injury was to the vertebrae of the neck and about the skull, a fracture of the spine. It was a permanent injury, that would affect the appellee in doing labor that would necessitate the use of his neck and shoulders in lifting. Appellee supposed that he could now earn a dollar a day. He had always done hard work, mostly in timber, and could not do that now at all. He had to turn his body when he looked around. Could move his head but little. It was a year after he was injured before he could do anything at all. He was confined to his bed from the time of injury for something like two months and "suffered about as bad as could be." Under such circumstances it can not be said that the verdict for the sum returned was excessive.

There is no reversible error in the record, and the judgment is therefore affirmed.