HOMEWOOD RICE LAND SYNDICATE v. SUHS.

Opinion delivered March 15, 1920.

1. MASTER AND SERVANT—INDEPENDENT CONTRACTOR.—Under a contract whereby plaintiff was to do all the work and labor and defendant to furnish the land, equipment and supplies to raise a crop of rice on 300 acres, for which defendant was to pay plaintiff $5,000, plaintiff was an employee, and not an independent contractor.

2. MASTER AND SERVANT—"INDEPENDENT CONTRACTOR" DEFINED.—An independent contractor is one who, in the course of independent occupation, prosecutes and directs the work himself, using his own methods to accomplish it, and represents the will of the company only as the the result of the work.

3. EVIDENCE—CIRCUMSTANCES EXPLANATORY OF CONTRACT.—Courts may acquaint themselves with the persons and circumstances that are the subject of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract so as to view the circumstances as they viewed them, so as to judge of the meaning of the words and of the correct application of the language to the things described.

4. MASTER AND SERVANT — COMPENSATION FOR SERVICES.—Where plaintiff was employed to raise about 300 acres of rice on defendant's land, and defendant agreed to pay him $5,000 "for labor to raise and properly irrigate, mature and harvest" the rice, plaintiff was entitled to the entire consideration, though he raised only 260 acres and harvested only 200 acres, if he exercised reasonable diligence in performing the services required of him under the contract.

Appeal from Prairie Circuit Court, Southern District; *George W. Clark*, Judge; affirmed.

*John L. Ingram* and *Harry E. Meek,* for appellant.

1.    Appellee was an independent contractor and not a servant.  26 Cyc. 970.

2.    The court erred in its oral charge to the jury. The excuses urged by appellee do not legally justify his admitted partial failure to comply with his contract.  13 C. J. 639-640; 112 S. W. 134; 158 Ill. App. 468; 21 L. R. A. 645.  Under appellee's own testimony appellant was entitled to judgment on the counterclaim.

*Cooper Thweatt* and *Chas. B. Thweatt,* for appellee.

Under the contract appellee was not an independent contractor but an employee or servant.  124 Ark. 90. His excuse for failure to raise a full crop of rice was a valid one.  128 Ark. 24; 124 *Id.* 90; 105 *Id.* 421; 113 *Id.* 181.  There is no error in the instructions, and the judgment is right on the whole case.

WOOD, J.  The appellee brought this action against the appellant to recover a balance which he alleged was due him on a contract entered into with appellant by the terms of which appellee was to raise about 300 acres of rice on the lands of appellant, being the same number of acres cultivated by the appellant in 1911.  Appellant was to pay appellee the sum of $5,000 "for labor to raise and properly irrigate, mature, and harvest" the rice.  The appellee was to do all necessary hauling, to do the plowing in the fall and winter for the next year's crop.  In case of too bad weather in the fall and winter, he was to be allowed to plow as late as April 15th.  If appellant was going to make a change in the employment or in case the appellee was going to make a change and stop raising rice after the termination of the contract, either party was to give the opposite party a notice of his intention in writing three months previous to the termination of the contract.  Appellee was also to make all necessary

levees, canals, flumes, and open up all drains and outlets pertaining to the crop; to keep all fences in good repair; to do the cutting and proper shocking of the rice; to take care of all the farming tools, wagons and machinery, putting same in the tool shed when not in use and to take good care of everything belonging to the party of the first part. There was also a further provision that all seed rice must be cleaned on fanning mill and the land must be well prepared, well ditched and harrowed. For raising the crops appellant was to pay appellee partly in monthly installments. The appellant during the time of threshing the rice was to furnish the appellee a man to tend to the separator and also to furnish an engineer and a man and team for the water wagon. The appellant was also to furnish seed rice, binding twine, rice sacks, coal and wood, oil and grease, and all necessary tools and machinery.

The appellee alleged that he had complied with all the terms of the contract, and that appellant had paid him the sum of $3,500, leaving a balance due him of $1,500, for which he prayed judgment.

The appellant answered denying that appellee had complied with the terms of his contract in this, that instead of seeding 300 acres of land to rice, as he was bound to do under the contract, he only seeded 260 acres, to appellant's damage in the sum of $2,250; that the appellee had also failed to harvest 60 acres of the 260 acres, which he seeded, to appellant's damages in the sum of $3,375, making the total damage to appellant, by reason of appellee's failure to comply with his contract, in the sum of $5,625. This sum the appellant asked to be allowed as a counter-claim against appellee.

The appellant also alleged that the appellee wrongfully appropriated to his own use 363 bushels of rice which were worth $163.35, which appellant claims as a set-off.

Appellant prayed that it have judgment against the appellee for said sums.

The appellee answered the cross-complaint, admitting that he only harvested about 200 acres of rice, but alleged that of the 300 seeded to rice 100 acres were lost on account of the failure of the appellant to supply enough water to irrigate the same. He denied that appellant was damaged in any sum on account of appellee's failure to comply with the terms of the contract. He also denied that he was indebted to the appellant for 363 bushels of cracked rice.

It will be observed that the execution of the contract was admitted by the appellant but it denied that the appellee had performed the contract on his part. On the contrary, it alleged that the appellee had failed to perform his part of the contract in the particulars set forth in its answer and cross-complaint and prayed for damages on account of such failure.

The first question, therefore, to be determined is whether or not the appellee complied with the contract. A proper solution of this involves a construction of the contract to determine what were the obligations of the appellant. Appellant contends that under the contract the appellee was an independent contractor and bound under the terms of the contract to produce and deliver to appellant about 300 acres of rice for which appellant was to pay him the sum of $5,000. Undoubtedly, if the contract read that "Edward Suhs hereby agrees and makes contract to raise about 300 acres of rice for which party of the first part agrees to pay the party of the second part the sum of $5,000," the appellant would be correct in its contention, for if these were the terms of the contract they would denote an unqualified undertaking upon the part of the appellee to produce and deliver to the appellant the rice from 300 acres of land according to his own methods and using his own means to accomplish the result without being subject to the control or direction of the appellant in any particular. But, when all the provisions of this contract are construed together, as they must be, the relation of the appellee to the appellant was not that of an independent contractor.

The contract itself does not undertake in words to define or characterize the relation of the parties to each other. Yet, when all of its provisions are considered, we are convinced that it should be construed as creating the relation of employer and employee or master and servant, rather than that of independent contractor employed for no other purpose than to produce through his own resources a crop of rice on appellant's land.

In *J. W. Wheeler & Co. v. Fitzpatrick,* 135 Ark. 117-24, this court, in the language of Judge Elliott, defines an independent contractor as follows: "An independent contractor may be defined as one who, in the course of an independent occupation, prosecutes and directs the work himself, using his own methods to accomplish it, and represents the will of the company only as to the result of his work." From Words and Phrases as follows: "An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work."

Now, applying the above definitions to the contract under review, it is manifest that the relation of the appellee to the appellant was not that of an independent contractor.

If the parties had intended that appellee's duty under the contract were at an end when he had cultivated, harvested and delivered the rice raised on 300 acres of appellant's land, the contract would have doubtless been couched in language similar to that above set forth and would have ended there. But, instead of this, the parties proceeded to specify things that are to be done by the appellee and appellant, which are wholly incongruous with the theory that the appellee was to produce and deliver to the appellant the rice grown on the 300 acres of land as a condition precedent to his receiving any consideration for his services. It will be observed that the contract does not stop with merely obligating the appellee to "raise about 300 acres of rice," but it proceeds to

specify the methods to be used, and enumerates the things which the appellee is required to do in order to produce such results, and also specifies certain obligations on the part of the appellant which must be done to contribute to such result, which necessarily imports that the appellee could not use his own means and methods but that he must adopt and use those furnished and specified by the appellant. Furthermore, the appellee had other duties under the contract to perform than those of simply raising 300 acres of rice. Among these was the duty to notify the appellant if he were going to quit raising rice after the termination of the contract. He was to clean all seed rice on a fanning mill and take care of all farming machinery.

Without further enumeration, it suffices to say that the reciprocal duties and obligations imposed by the words of this contract are entirely inconsistent with the relation of employer and independent contractor. If the parties had intended to create such relation the words used were wholly unnecessary and inappropriate. But if we are mistaken in this conclusion when the words of the contract alone are considered, then certainly there can be no doubt of the correctness of our conclusion when the contract is considered in the light of the testimony.

The president of the appellant, among other things, testified that he was to a certain extent in active charge and control of the affairs of appellant with reference to raising rice. He would go over there to see what was going on and then go home and report to the directors of appellant. The appellee "practically looked to all of us for his directions."

The testimony shows that the appellee had occupied virtually the same relation to appellant for four years previous to 1913 except that he received a smaller salary. His relations up to the year 1913 had always been satisfactory, and he had always been paid for his work. Appellee was paid for his services, notwithstanding he failed to produce rice on all the land of appellant under

his contract. In 1912 appellee was operating under the identical contract that he had in 1913 except as to the amount of compensation for his services, and he fell short some forty to forty-five acres that year from the amount he cultivated the year previous. Notwithstanding this fact, the appellant renewed his contract and increased his pay from $4,500 to $5,000.

One of the directors visited appellant's farm in August, 1913. He and the appellee in looking over the farm agreed that seventy acres of the rice had not been irrigated. This director was asked if on that occasion he told appellee that if he (appellee) harvested the crop as it then stood he would get a bonus of $100, and he replied that he might have done so.

The appellee testified that this director had promised him on this occasion, after seeing that seventy acres of the land was not watered, that if he (appellee) raised and harvested the crop like it then stood that he would pay appellee $100.

Another witness testified that he heard the president of appellant say, after the crop was harvested in November, that he was pleased with the results. Witness heard a conversation at that time between the president and the appellee concerning appellee's continuing to work for the appellant during the year 1914.

The appellee testified that in January, 1914, that the appellant tried to make a contract with him for the year 1914.

The president of appellant testified that he was the man who looked after making the payments to the appellee under the contract. On February 7, a short time before the differences between the appellant and the appellee arose, he was down at the rice farm and gave the appellee a check for $800 on account and a due bill for the balance:

"Stuttgart, Ark., Feb. 7, 1914. Paid to Edward Suhs up to date for salary on 1913 contract thirty-five hundred dollars ($3,500), balance fifteen hundred dollars ($1,500). Henry Moecker."

Witness was asked the following question:

"Q. Didn't you tell him that if you had the money in the bank you would pay it all to him then, but as you did not have it he would have to wait until you got back to Homewood?"

"A. I might have said that, yes. But when I came back to Homewood, it was all different. The directors refused, and cautioned me for even paying that $800."

In *Wood* v. *Kelsey,* 90 Ark. 272-7, we said: "Courts may acquaint themselves with the persons and circumstances that are the subject of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described." *Alf Bennett Lbr. Co.* v. *Walnut Lake Cypress Co.,* 105 Ark. 421; *Maloney* v. *Maryland Casualty Co.,* 113 Ark. 178-81; *Arlington Hotel Co.* v. *Rector,* 124 Ark. 90.

Therefore, if it can be said that the language of the above contract is ambiguous, then the above testimony clearly shows that it was not the intention of the appellant to make the appellee an independent contractor and treat with him as such. Having concluded that appellee under the contract was not an independent contractor and that his relation to the appellant was rather that of a servant, it follows that the appellee was not absolutely bound under his contract to produce and deliver to appellant 300 acres of rice before he was entitled to recover under the contract.

The next question, therefore, is, did the appellee exercise reasonable diligence in performing the services required of him under the contract? The appellee admitted that he did not produce and deliver to the appellant rice raised on 300 acres of land, but he alleged that his failure to produce and deliver the rice on that number of acres was caused by the insufficiency of the pumping plants to irrigate the farm and to the inability of the appellee to harvest all of the crop produced because

of the muddy condition of the field due to the extraordinary rainfall.

As to whether or not appellee had exercised ordinary care to comply with the terms of the contract on his part to raise 300 acres of rice and whether or not the failure to do so was caused by his negligence or through failure of the appellant to supply him sufficient pumps and machinery to irrigate the land or through excessive rainfall which precluded appellee from harvesting all the rice that was produced on the land of appellant, were all purely issues of fact. It could serve no useful purpose to set out in detail and discuss the testimony bearing upon these issues. We have carefully examined the instructions in which these issues were sent to the jury, and we find no reversible error in any of them. There was evidence to sustain the verdict.

Affirmed.