TERRY DAIRY COMPANY *v.* PARKER.

Opinion delivered June 14, 1920.

1. CORPORATION—VENUE—PLACE OF BUSINESS.—Where a defendant corporation employed an agent to purchase milk in a county other than that wherein it carried on its principal business, and provided a building for receiving the milk, process might be served on such agent within Acts 1909, No. 98, as this was "a branch office or other place of business."

2. NEGLIGENCE—QUESTIONS FOR JURY.—The question of the negligence of the driver of a motor truck which struck plaintiff, as well as the question of plaintiff's contributory negligence, *held* for the jury.

3. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict supported by evidence legally sufficient to sustain the finding is conclusive on appeal.

4. MASTER AND SERVANT—PRESUMPTION—REBUTTAL.—Where the motor truck which injured plaintiff was owned by defendant company which also paid for its license, whether the *prima facie* case that the truck was operated for defendant was overcome by the evidence, was a question for the jury.

5. MASTER AND SERVANT—INDEPENDENT CONTRACTOR.—The fact that one sold a dairy company's milk and cream on commission and delivered same in the company's truck is not alone sufficient to prove as matter of law that he was an independent contractor; that being a question for the jury.

6. MASTER AND SERVANT—LIABILITY OF MASTER—BURDEN OF PROOF.—In an action against the owner of a motor truck for injuries occasioned by the driver's negligence, plaintiff has the burden of proving that the driver was the owner's servant.

7. MASTER AND SERVANT—RELATIONSHIP—PAYMENT OF WAGES.—In determining whether the driver of a truck was servant of the owner or of an independent contractor, the jury should consider in whose business the driver was engaged and who had the right to control and direct his conduct; and in determining this question they should consider not merely who paid the driver's wages but all the facts and circumstances in proof.

8. MASTER AND SERVANT—NEGLIGENCE OF SERVANT.—A master is liable to third persons injured by negligent acts done by his servant in the course of his employment, although the master did not authorize or know of the servant's acts or neglect, or even if he disapproved of or forbade it.

9. MASTER AND SERVANT—WHEN RELATIONSHIP EXISTS.—The relation of master and servant exists wherever the employer retains the right to direct the manner in which the business shall be done as well as the result to be accomplished.

10. TRIAL—ARGUMENTATIVE INSTRUCTIONS.—The refusal of prayers which were argumentative and calculated to mislead was proper.

11. TRIAL—IMPROPER QUESTION.—Where a question as to whether defendant was insured was ruled by the court to be incompetent, and in response to a request to instruct that the jury should not consider testimony as to insurance the court reiterated the ruling that the witness should not answer as to insurance, the prejudicial effect of the improper question was removed.

12. DAMAGES—EXCESSIVENESS.—An award of $10,000 to a physician for severe and permanent injury to the knee joint which necessitated the use of crutches and rendered him unable to earn more than a pittance was not excessive where he had earned $3,000 to $4,000 per annum.

Appeal from Prairie Circuit Court, Southern District; *G. W. Clark,* Judge; affirmed.

*Buzbee, Pugh & Harrison* and *Carmichael & Brooks,* for appellant.

1. There was no proper service on the appellant, a corporation organized and doing business under the laws of Arkansas. The case in 115 Ark. 272, is not in point. The motion to quash the service should have been sustained, as the court obtained no jurisdiction. The pretended service was upon a person who had no contract with appellant and was not in charge of any branch of appellant's business; his only duty was to take milk from the farmers, weigh and ship it to appellant at Little Rock. He was not an agent of appellant upon whom process could be served, even under the rule in 115 Ark. 272.

2. The truck which it is alleged injured plaintiff was operated by an independent contractor, Ellison, and appellant was not liable for his acts or those of his servant or employee. 105 Ark. 477-481; 77 *Id.* 551; 156 N. Y. 75; 111 Ark. 247; 90 Conn. 444; 97 Atl. 328. The court erred in giving and refusing instructions. 111 Ark. 247, and cases *supra.* 111 Ark. 483, 498. See, also, Babbitt on Motor Vehicles, § 559; 177 Mass. 530. The ownership of the truck and the printed name thereon did not prove anything as to ownership or liability.

3. Appellee was guilty of contributory negligence. The truck was moving at a very slow rate of speed and running in low gear. If appellee had exercised ordinary care, such as is demanded of every pedestrian, he would not have been struck.

4. There is no evidence to sustain the verdict and it is excessive. 79 Ark. 621.

5. There were many errors in the admission of testimony.   72 Ark. 409; 68 *Id.* 594-5.

6. It was error not to exclude the question as to insurance.   114 Ark. 542; 104 *Id.* 1; 114 Ark. 542.

*Beloate & Anderson* and *Pace, Campbell & Davis,* for appellee.

1. The service was lawful and proper. It was upon Kearns, the agent, servant and employee in charge of a branch office and place of business of defendant in Prairie County, Arkansas.   Act 98, Acts 1909, p. 293; 115 Ark. 272.

2. The truck was not operated by an independent contractor. It belonged to appellant. It was painted TERRY DAIRY COMPANY, and the license number on the truck made a *prima facie* case that defendant owned the car and that the custodian of it was engaged in the owner's service.   214 N. Y. 249.   Ellison was not an independent contractor.   135 Ark. 117; 61 S. E. 811; 52 Minn. 474; 157 Ky. 836; 84 N. J. L. 598; 124 Pac. 38; 49 La. Ann. 1465; 109 Fed. 732; 132 U. S. 523; 40 S.W. 309.

3. There was no error in the instructions given or refused.   135 Ark. 117; 133 *Id.* 334; 134 *Id.* 1; 37 *Id.* 580; 77 Ark. 551; 111 *Id.* 91; 118 *Id.* 561.

4. Appellee was not guilty of contributory negligence; he used ordinary care and looked and listened, as the evidence shows abundantly, and the finding of the jury is sustained by the evidence and is conclusive under the proof.   102 Ark. 351; 92 *Id.* 502; 94 *Id.* 246; 97 *Id.* 347; 101 *Id.* 424; 134 *Id.* 320; 85 *Id.* 479; 81 *Id.* 187; 110 *Id.* 495; 96 *Id.* 243.

5. There is ample evidence to sustain the verdict. 112 Ark. 607. The truck was going at twelve or fifteen miles an hour at a public crossing.   118 Ark. 506; 102 *Id.* 351; 134 *Id.* 320; 135 *Id.* 466.

6. There was no error in the admission of testimony.   Kirby's Digest, § 3138; 68 Ark. 587.   The record shows no prejudicial, adverse rulings against appellant and no proper exceptions were saved.   77 Ark. 238; 112

*Id.* 57; 131 *Id.* 121. Every proper objection made by appellant was sustained. There was no error about the question of insurance. 131 Ark. 6. The verdict is not excessive; his injury is permanent, and under the proof a much larger verdict would be sustained.

WOOD, J. This is an appeal from a judgment in favor of the appellee against the appellant.

The appellee filed a complaint in the Prairie Circuit Court against the appellant in which the appellee alleged, among other things, that the appellant was a corporation of the State of Arkansas, having its domicile and principal office and place of business in Little Rock, Arkansas; that it also keeps a place of business in the Southern District of Prairie County, Arkansas; that it uses automobile trucks to transport its products; that on May 23, 1919, the appellee was walking north along the west side of Main street of the city of Little Rock along the usual route used by pedestrians; that while crossing Fifth street he was struck by one of appellant's large trucks driven by its negro employee; that he was hit with such force that it knocked him down and seriously injured him.

The appellee further alleged that the employee was driving the truck at a high rate of speed in a negligent and reckless manner; that such employee did not give the appellee any warning of his approach; that he thus failed to exercise ordinary care to observe the appellee and avoid injuring him. Appellee then described the nature of his injuries and alleged that he had been damaged thereby in the sum of $40,000, for which he prayed judgment.

Summons was issued, and the return shows that it was served "by delivering a copy of the summons to G. J. Kearns, agent, at its branch office in the Southern District of Prairie County, Arkansas."

The appellant moved to quash the service and alleged in its motion that it was an Arkansas corporation with its principal place of business in Pulaski County, and that it could only be served in that county; that it

had no such branch office upon which service could be had in Prairie County.

The testimony adduced on the motion to quash was substantially as follows: The appellant maintained a frame building about 20 by 24 feet, on the railroad in the town of Hazen, on which was painted Terry Dairy No. 3. It was appellant's receiving station. G. L. Kearns was appellant's servant at this station. His duties were to receive the milk sent in to the station by the farmers. He was not paid to solicit anything. He was to weigh up the farmer's milk, put it in cans and ship it to appellant at Little Rock, but had no authority to employ or discharge anyone. His duties required his attention only a few hours a day, after that he could work for other people if he pleased. Appellant had an engine for cooling the milk before it was shipped. It was the duty of Kearns to operate this engine. Kearns bought the milk which appellant's customers brought into the station. Appellant would buy milk from anyone whose milk passed inspection. When appellant received from Kearns the name of the owner, the number of pounds of milk delivered by him at the station at Hazen, appellant would make out checks for each individual farmer, and the last of the month appellant sent the checks to Kearns for delivery. Kearns did not pay out or take in any money for the appellant. There was a desk in the building, and Kearns made daily reports of the business.

Appellant authorized its agent, Kearns, to pay for the milk down there whatever was the market price. Kearns did not have anything to do with making the price. The farmers would write to appellant at Little Rock asking what appellant was going to pay.

Appellant conducted its business through Kearns, at its station at Hazen, for its own convenience. It had had several agents down there before Kearns. Kearns shipped to the appellant about 100 gallons of milk daily, which was obtained and treated in the above manner.

At different times within the last two years appellant had shipped to its station at Hazen milk supplies and ma-

terials.  Appellant paid Kearns $60 per month, for his services.  Appellant maintained a receiving station similar to the Hazen station at Screeton.

The court overruled the motion to quash the service. Appellant contends that this was error, and this presents the first question for our consideration.

In *Fort Smith Lumber Co.* v. *Shackelford,* 115 Ark. 272, this court construed act 98 of the Acts of 1909, which provides the manner of obtaining service upon foreign and domestic corporations in this State.  In that case was said:  "But the term 'other place of business' designates a place where an established business of the company is carried on, regardless of whether the company has its principal or branch office situated there or not.  The agent, servant, or employee in charge of a branch office, under the statute, must be one having authority to carry on the general business of the company, but not so as to the agent, servant, or employee in charge of the other place of business.  His authority may be only limited and special, and confined to the particular business over which he has supervision.  To be sure, the statute contemplates that there must be maintained a place where a well defined line of business is carried on with an agent in charge of that business."

The facts of the present case show that the appellant was maintaining at the town of Hazen a place where it was conducting a well defined line of its business.  The appellant, as its name implies, is engaged in a business in which a supply of milk is indispensable.  For its convenience it had a building, on the railroad equipped with machinery, which it designated as its plant No. 3.  This building had in it a desk which the agent in charge used in making daily reports of the business.  The agent was employed on a salary.  The building was equipped with the necessary machinery for cooling the milk and the business of the company was that of obtaining from the farmers in that locality a supply of milk to be shipped to its principal place of business at Little Rock.  The building was duly equipped and appointed, and the agent

was supplied with the necessary material for successfully conducting that part of appellant's business.

As was stated in the above case: "An agent competent to conduct such a business could be depended upon with reasonable certainty to apprise the corporation of the service had upon him. It was the design of the Legislature that service could be had upon an agent of this character, and that when so obtained it should constitute service upon the corporation itself."

The ruling of the court was correct in overruling the motion to quash the service.

After the motion was overruled, the appellant answered and denied all material allegations of the complaint and set up the defense of contributory negligence.

Appellee testified substantially as follows: That he lived at Walnut Ridge, Lawrence County, Arkansas; that he was in the city of Little Rock on May 22, 1919. He was crossing Fifth street where it joins with Main street. He was going north on Main street on the west side. When he approached the crossing, he checked momentarily at the curbing, saw that the coast was clear, and when he was about the center of Main and Fifth streets he glanced to his right and did not see anything, he then glanced to his left and someone hollered "Look-out!" He turned his head to the right and the front of the car struck him. He was walking on the right-hand side of the foot crossing which was about ten or twelve feet wide and was picked up on the left-hand side of that crossing. After he fell the car stopped on his right foot. He then hollered to the driver who backed the car off. Then appellee discovered that he was not able to walk to the hotel. Appellee described and exhibited his injuries to the jury, which will be referred to later. The appellee did not hear the negro driver blow the horn.

M. L. Brewer, who was standing at the northwest corner of Fifth and Main streets, saw the truck a few seconds before it struck appellee. It was perhaps 15 feet from him coming toward the Capitol on Fifth street. It was coming fast, at possibly 15 miles an hour. The radi-

ator of the truck hit the appellee and knocked him four or five feet. If the negro driver blew his horn, the witness did not hear it.

Giving the above testimony its strongest probative force in favor of the appellee, the issues of negligence and contributory negligence were for the jury.

The appellant does not complain of the instructions under which the issues were submitted; and since there was evidence legally sufficient to sustain the finding of the jury on these issues, the verdict is conclusive.

The appellant contends that the undisputed evidence shows that the injury to appellee was caused by an independent contractor. On this issue, Will Terry, president of the Terry Dairy Company, testified substantially as follows:

The appellant is engaged in selling milk and manufacturing and selling ice cream. It buys milk from dairy farmers and distributes it to its customers in Little Rock. During the summer months it contracts with drivers to sell what the stores want. Appellant starts running its wagons about the first of March. It gets good men who take it on commission, and it gives 10 per cent. a gallon for the first 30 gallons and 5 per cent. a gallon over that. It had three men running like that. Bob Ellison was one of them. He was using appellant's truck at the time of the injury. Appellant paid the license on the truck. The truck had painted on it in big letters "Terry Dairy Company." Appellant did not have any control over Ellison as to the quantity of cream he should sell or dispose of or to whom he should sell. He would come in in the morning and write out his order for what he wanted, and then he would sell to whomsoever he pleased and turn in what he sold. He got whatever he wanted, and it was loaded on the wagons and the company had no more control of it. Appellant had a verbal contract with Ellison by which he would take out his cream and sell it and account to appellant for the price of the cream. He turned back the cream he did not sell and got credit for that. He was charged with the amount he got in the

morning and had to account for that amount of cream, either by turning in charge tickets or turning in cash for what he sold. He had been working for the company four or five years. Appellant paid Ellison's commissions once a week. Did not pay him anything except the commission. Appellant did not furnish Ellison any help; if he hired any help, appellant did not have anything to do with it. John Freeman, the negro driver who was driving the truck at the time of the injury was not working for appellant although he had previously worked for appellant in the capacity of truck driver and anything else that came up. At the time of the injury his name was not on appellant's pay roll, but when he had worked for appellant his name was on the pay roll.

Ellison testified that he had worked for appellant company 3 1-2 years. He took a route about three years ago. He was asked whether or not he had a contract and if so with whom and answered: "Wasn't any contract, you might say, they paid me on a commission basis, so much a gallon." His testimony as to the way the cream was handled is substantially the same as that of Terry. John Freeman was his help at the time of the injury. He was hired by witness. Witness never turned in the amount of wages to the company. Witness discharged him. Witness directed Freeman when to go and where to go. Witness was asked on cross-examination if he had not had a conversation with one Anderson, on the day when the negro driver, John Freeman, was convicted before the police judge for reckless driving, in which he said that he and Freeman were employees of the Terry Dairy Company. He answered that he had not made any such statement.

Witness Anderson testified, on behalf of the appellee, that on the day above mentioned he had a conversation with Ellison in which the latter stated that he and Freeman were employees of the Terry Dairy Company.

John Freeman testified that he was in the employ of Ellison at the time of the injury. That Ellison paid his wages and the fine assessed against him by the police

court. On cross-examination he testified that he had been in the employ of the Terry Dairy Company as driver of its trucks. It was paying him $15 per week. That the Terry Dairy Company had turned over the route on which he was driving to Ellison. He believed he was working for the company until Ellison started to pay him off. That he had worked for the company nearly all his life. When he would come in off the trip, the company would ask him to help them to put up orders and he would do whatever they asked him to do. They had something for him to do all day.

Appellant owned, and paid the license for running the motor truck. This was *prima facie* evidence, at least, that the truck was being operated for appellant at the time appellee was injured. It was a question for the jury as to whether the *prima facie* case had been overcome by evidence to the contrary. *Ferris* v. *Sterling,* 214 N. Y. 249.

Under the above testimony it was an issue for the jury as to whether or not Ellison was an independent contractor at the time of the injury to appellee, and as to whether or not John Freeman was in his employ or in the employ of the appellant. The fact that Ellison was paid for his services or worked on a commission basis is not alone sufficient to prove that he was an independent contractor. *Nyback* v. *Champagne Lbr. Co.,* 109 Fed. 732, and other cases on brief of appellee.

The testimony, viewed in its most favorable light for the appellee, justified the finding that both Ellison and Freeman, at the time of the injury, were employees of the appellant.

On this issue the court instructed the jury that the burden was upon the appellee to prove that John Freeman was under the direction and control of the appellant at the time of the injury to the appellee.

The court further instructed the jury as follows: "In determining whether the negro driver of the truck was the servant of the defendant Terry Dairy Company or the servant of Ellison, you should determine from the

evidence in the case in whose business the negro was engaged and who had the right to control and direct his conduct; and in determining this question you should take into consideration not merely who paid the negro's wages but all the facts and circumstances in the proof in the case.''

These instructions were in conformity with the previous decisions of our court and correctly declared the law in determining whether the relation existing between John Freeman and the appellant at the time of the injury was that of master and servant or whether at that time he was the servant of an independent contractor.

In the recent case of *J. W. Wheeler & Co.* v. *Fitzpatrick,* 135 Ark. 117, we defined what constitutes a relationship of an independent contractor and it is not necessary to repeat it here.

In *Singer Mfg. Co. v. Rahn,* 132 U. S. 523 (33 U. S. Law Ed. 440), it is held: ''A master is liable to third persons injured by negligent acts done by his servant in the course of his employment, although the master did not authorize or know of the servant's acts or neglect, or even if he disapproved of or forbade it. The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done.'' This is also the doctrine announced by our own decisions.

If Ellison was an independent contractor, under *Wheeler v. Fitzpatrick, supra,* and he had the right of direction and control over Freeman at the time of the injury, then the appellant was not liable. On the other hand, if Ellison was not an independent contractor but himself a servant of the appellant, and if both he and Freeman at the time of the injury were employees or servants of the appellant and it had direction and control over them in the business of delivering cream, then appellant was liable.

The instructions were correct declarations of law to guide the jury in determining these issues. *St. L., I. M. & S. Ry. Co.* v. *Gillihan,* 77 Ark. 551; *Ark. Natural Gas Co.* v. *Miller,* 105 Ark. 477; *St. L., I. M. & S. Ry. Co.* v. *Cooper,* 111 Ark. 91; *Ark. Land & Lumber Co.* v. *Secrist,* 118 Ark. 561.

Appellant presented certain prayers for instructions which were refused and which ruling of the court appellant here contends was error. It would unduly extend this opinion to set them out and comment upon them in detail. We have carefully examined them and find that such portions of them as are correct were covered by the instructions given. The refused prayers, taken as a whole, were argumentative and were calculated to confuse and mislead the jury. The court did not err, therefore, in refusing them.

Witness Ellison was asked on cross-examination by the appellant the following question: "I will ask you if you did not go on further and talk about this injury and in this connection did not you tell him the negro was working for the Terry Dairy Company and did not you further state that the Terry Dairy Company carried insurance that covers this matter and did not care anything about it?"

The appellant objected to the question, and the court ruled that that part of the question which applies to the insurance was not competent and could not be answered.

The appellant asked the court to instruct the jury not to consider the testimony relating to the appellant carrying liability insurance.

The court in response stated: "As the court has already held, that part which relates to the insurance the witness will not be allowed to answer."

The ruling of the court in the presence of the jury was tantamount to an instruction to the effect that that part of the question which applied to the insurance was not competent and would not be considered by the jury. The court did not permit the witness to answer the question, and the prejudicial effect, if any, of the improper

question was removed by the decided ruling of the court holding that the question was incompetent.

There was no error in allowing the daily report sheets and pay rolls of appellant to be exhibited to the jury. This testimony was competent and was introduced under what was equivalent to an agreement on the part of counsel for the appellant in open court to the effect that counsel for the appellee might introduce any of the sheets from appellant's books that he might desire.

The verdict was not excessive. Appellee was a physician and surgeon and at the time of his injury was enjoying a practice which netted him from three to four thousand dollars a year. Appellee was severely injured in the knee joint. The knee joint was torn apart and twisted as he went down which resulted in the big muscle being torn entirely loose from the knee cap. There was an opening left from which the semovial fluid oozed out and ran down his limb. The injury was permanent. Appellee had to use crutches when he moved about in his office. Since his injury appellee had been able to earn only a mere pittance. Appellee has an expectancy of thirteen years.

The jury were justified under the evidence in returning a verdict in the sum of $10,000.

Since there is no reversible error in the record, the judgment for that sum in favor of the appellee must be affirmed, and it is so ordered.

HART, J. (dissenting). I think the court should have sustained appellant's motion to quash the service in this case. Our statute provides, in effect, that all foreign and domestic corporations who keep or maintain in any of the counties of this State a branch office, or any other place of business shall be subject to suits in any of said counties.

In *Fort Smith Ltr. Co.* v. *Shackleford,* 115 Ark. 272, the court said that the term "branch office" refers to a place where the company may conduct its general business in the same way that it carries on its business at its

principal office.   The court further said that the term
"other place of business" designates a place where an
established business of the company is carried on regard-
less of whether the company has its principal or branch
office situated there.

The court further said that the statute contemplates
that there must be maintained a place where a well de-
fined line of business is carried on with an agent in charge
of that business.   In that case the company operated and
maintained a storehouse at one of its logging camps.
It is true that the business was located in some box cars
and was moved when the logging camp was moved, but
the company carried on the business of selling merchan-
dise in the cars the same as it did at the place where it
operated its general store.

Here the facts are essentially different.   The Terry
Dariy Company was engaged in the wholesale and retail
milk and ice cream business in the city of Little Rock,
Arkansas.   At Hazen, in Prairie County, Arkansas, it
rented a building for the purpose of receiving and cool-
ing milk preparatory to being shipped to it at Little
Rock.   On the walls of the house there were painted the
words, "Terry Dairy Company No. 3, Receiving Sta-
tion."   The agent of the company there received milk
and shipped it in to the company at Little Rock.   He
never bought any milk, nor had anything to do with fix-
ing the price.   His duties were to receive the milk and
send in to the company a list of names from whom they
received it and the quantity received.   The company
fixed the price at Little Rock and sent back the checks
to the agent for the price of the milk, and he then deliv-
ered them to the persons who had brought in the milk
to be shipped to the company at Little Rock.

I do not think that this constitutes conducting or
carrying on a well defined line of business by the appel-
lant with an agent in charge of it.   It seems to me that
it is an unwarranted, as well as unwise, extension of the

rule in the Shackleford case. Therefore I think the motion to quash the service should have been sustained.

I also think the court erred in refusing to give instruction No. 11 requested by the appellant. The instruction reads as follows: "You are instructed that if you find from the evidence that the defendant, Terry Dairy Company, furnished a truck to one Ellison, and that the said Ellison used the truck for the purpose of delivering cream, and that the said Ellison's compensation for the handling and delivering of the cream was a certain commission, and that the said Ellison had the right and authority to employ drivers for his wagon or truck, and if you find that he did hire the driver, Freeman, and had the right to hire him and discharge him, and the said Freeman was not employed or controlled by the defendant, Terry Dairy Company, then you will find that the said Ellison was an independent contractor, and your verdict should be for the defendant, Terry Dairy Company."

Appellant had a right to have its theory of the case presented to the jury in a concrete form, and I do not think that the instruction is in any sense argumentative, as stated in the majority opinion.

Where the defendant lets out work to a contractor, and the work is not in itself unlawful and intrinsically dangerous, and no negligence is committed in the selection of the contractor, and the company only exercises control over the work to the extent of general supervision and inspection, to the end that it may determine whether the work is being done according to requirements and specifications of the contract, but has no other control over the work nor the power to choose, direct and discharge the employees of the contractor, the defendant is not liable for injuries due to negligence of the contractor or his servants. *J. W. Wheeler & Co.* v. *Fitzpatrick,* 135 Ark. 117.

The facts in the present case call for an application of the rule announced in the *W. T. Rawleigh Med. Co.* v. *Holcomb,* 126 Ark. 597. The court made a mistake in

stating that they (referring to the Terry Dairy Company) had something for Freeman to do all day. Freeman was under the exclusive direction and control of Ellison, and the record shows that he only did occasional jobs for the company when the wagon came in from its day's work in the evening. If the medicine company had been sued for damages caused by Holcomb negligently running over someone, and the facts had been as stated in the opinion, the court would doubtless have held as a matter of law that the medicine company was not liable.

So here the only thing that would prevent the court from declaring as a matter of law that the defendant was not liable would have been that the testimony of the witnesses, Ellison and Freeman, with regard to the accident was contradicted by the plaintiff, and for that reason it could not be said that their testimony was undisputed on the phase of the case relating to Ellison being an independent contractor.