ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* COOPER.

Opinion delivered January 19, 1914.

MASTER AND SERVANT—NEGLIGENCE—LIABILITY—QUESTION FOR JURY. —Defendant railway company hired plaintiff to work at raising the dump on its right-of-way. Plaintiff furnished a boy and a mule to work a scraper. A servant of defendant gave the boy directions in handling the scraper. In the course of the work the mule was severely injured and had to be killed. *Held*, under the evidence, which showed that the team and its driver were under the actual control of defendant's servants, the question of defendant's negligence was one of fact for the jury.

Appeal from Saline Circuit Court; *W. H. Evans*, Judge; affirmed.

STATEMENT BY THE COURT.

The plaintiff, Sam T. Cooper, brought this suit against the St. Louis, Iron Mountain & Southern Railway Company, the defendant, to recover damages for injuries to his mule, which he alleges were sustained by reason

of the negligence of the defendant. The facts proved by the plaintiff are substantially as follows:

The defendant, in October, 1912, was engaged in raising and widening the dump on its right-of-way near Traskwood, in Saline County, Arkansas. The work was done by an extra gang, in charge of C. R. Horn. A number of teams with drivers were hired to do the work, and among them was the team of the plaintiff; and he furnished his son, a boy about thirteen years of age, to drive the team. The plaintiff received the sum of $4.50 per day for the services of his team and driver. At the time the mule was injured, the team was hitched to a scraper, or slip, which had a sharp front end, and was engaged in hauling dirt on the dump. A runway was constructed for the teams to go up on the dump. The runway struck the dump at an agle of about 50 or 60 degrees, and gradually came up to the top. When a slip or scraper was filled with dirt, it was hauled up this runway by the team, and a person up there called the ''dumper'' would direct the driver where to go, and the dumper would then take hold of the handles of the scraper and dump the load. The driver would then drive off the dump on another runway similarly constructed to the one he came up. Sam Cooper, the plaintiff, had been in charge of the work under the directions of the foreman at the place where the mule was injured prior to the day of the injury. But on that day he had been directed by the foreman to work elsewhere, and the work at that place was in charge of John Pryor. E. F. Newcomb, who was also an assistant to the foreman, testified that on the morning of the injury, the timekeeper of the railway company had arrived, and that Horn, the foreman, had directed them to hasten the work. The son of the plaintiff was driving his team on that morning, as usual, and when he drove up on the dump Pryor directed him where to go, and after unloading the scraper, told the boy to drive square off of the dump. This the boy did, and while the team was going down the dump the sharp edge of the scraper struck one of the mules on the hind leg, injuring it so

severely that the mule had to be killed. The mule was worth $160. Another witness for the plaintiff saw the accident, and also stated that the boy drove square off of the dump under the direction of Pryor. Both the plaintiff and Newcomb testified that the teams were under the direction of the foreman, or the dumper who was in charge of the work at that particular place, and that the orders were that the drivers must go where the dumper said, and that the dumpers had authority to tell the drivers where to dump the dirt and where to go after the scraper was unloaded. They said that after unloading the scrapers it was usual for the teams to go down the runway provided for that purpose, but that the dumper, or person in charge, had authority to direct the drivers how to pull off of the dump, and that they had exercised this authority during the whole progress of the work.

C. R. Horn, for the railway company, testified: I was in charge of the grading gang for the railway company at the time the plaintiff's mule was injured. The embankment at the place where the injury occurred was from five and a half to six feet high—that is, that much above the level. It was the duty of the dumper to keep the embankment within four inches of the bottom of the rails, and when the teams with the scrapers were driving up there he would tell the driver where he wanted him to go, and would take hold of the handle of the scraper and dump the load. He had no authority to tell the driver how to go off the dump, and it was the duty of the driver to go down the runway which was provided for that purpose. On cross examination, Horn stated that the railway company had charge of the movement of the teams and of the drivers, and that he had charge of the work. The boy had been driving the team for about two weeks before the accident occurred.

The jury returned a verdict for plaintiff in the sum of $160, and the defendant has appealed.

*E. B. Kinsworthy, H. S. Powell* and *T. D. Crawford,* for appellant.

*J. C. Ross,* for appellee.

Appellant was in control of the driver of appellee's team at the time of the injury, and directed the doing of the act which caused the injury. Appellant is therefore liable. 203 N. Y. 191; 171 N. Y. 507; *Id.* 677; 212 U. S. 215; 29 Can. Sup. Ct. 624; 179 Fed. 50; 64 Misc. 167; 136 N. Y. S. 119; 11 Atl. 642; 6 M. & W. (Eng.) 499; Wood on Master & Servant, 631, § 317; 1 Thompson on Negligence, § 581; American Ann. Cases, 1913A, 889; 71 Me. 541; 64 Wis. 620; 77 Ark. 367-377.

Hart, J., (after stating the facts). The principles of law governing the liability of the defendant in this class of cases was discussed in the case of the *Standard Oil Co.* v. *Anderson,* in 212 U. S. 215. The court said:

"It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men became *pro hac vice* the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another than that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work and they are for the time his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being per-

formed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking.''

Thus it will be seen the right to control the work, as distinguished from the actual exercise of control, is an important element in determining the liability of the defendant in cases like this. The control of the work reserved in the employer is the control not only of the result of the work, but also of the means and manner of the performance thereof. And, therefore, where the employee represents the will of the employer not only as to the result of the work, but also of the means and manner of accomplishing it, he is an independent contractor. In the present case, according to the testimony adduced by the plaintiff, he had entirely abandoned all control of the driver to the foreman in charge of the gang for the railway company, who, for the time being, appropriated and controlled his services in carrying on its business. The evidence of the plaintiff shows that the control of the driver passed to the railway company during the performance of the work, and that at the particular time the injury occurred, the driver was acting under the direction of the railway company. The foreman of the railway company had the right, not only to direct where the load should be dumped, but how and where the driver should leave the dump. The foreman of the railway company denied that either he or his assistants had any authority to direct how the driver should go off the dump after his scraper was unloaded, but the plaintiff and another one of the foreman's assistants both testified that he had such authority, and that they were accustomed to exercise it under his directions. It appears from the testimony of the foreman himself that he had general charge of the work, and had the power to hire teams and drivers, and to discharge them at will. According to the

testimony of plaintiff, his team and its driver was actually placed under the exclusive control of the railway company while engaged in doing the work, and under all the facts and circumstances adduced in evidence, the question of the defendant's negligence was one of fact for the jury to determine, rather than a question of law for the court.

The respective theories of the parties to the suit were fully covered in the instructions given by the court to the jury.

The son of the plaintiff testified that he was strong enough to handle a scraper, and did handle it, and that he knew how to do so. At the request of the defendant, the court, in effect, instructed the jury that if it found from the evidence that had a grown person possessing ordinary care and caution been in charge of plaintiff's team at the time the mule was injured, such injury would probably not have occurred, then it would be its duty to return a verdict for the defendant. The court further instructed the jury that if it found that plaintiff's mule was injured from any negligence or inability on the part of the boy to handle the team as a reasonably prudent person of adequate strength could and would have handled it under like circumstances, then it should return a verdict for the defendant.

Many objections have been made by counsel for defendant on account of the instructions given by the court, as well as those refused; but they all are predicated upon the theory that under the facts of the case there was no liability on the part of defendant. But, as we have already seen, the liability of the defendant was a question of fact for the jury, and not one of law for the court.

We think the case was fairly submitted to the jury, under proper instructions, and the judgment will be affirmed.