HARGER *v.* HARGER.

Opinion delivered June 14, 1920.

1. EXCEPTIONS, BILL OF.—AUTHENTICATION.—The judge's certificate that "the above and foregoing is a true and perfect bill of exceptions in this cause" is a sufficient authentication of the bill, though the clerk's filing certificate and a blank for the judge's certificate precede the page on which the above certificate appears.

2. MASTER AND SERVANT—INDEPENDENT CONTRACTOR.—Where a coal mine lease required the lessee to operate the mine, keep it in good repair, sell the coal mined to the lessor, and keep the lessor protected by liability insurance, and requiring the owner to surrender the mine to the lessee, though the lessor reserved the right to send inspectors to see that the property was cared for and not injured, the lessor was not liable to an employee of the lessee for injuries received during the operation of the mine by the lessee; the latter being an independent contractor.

3. MASTER AND SERVANT—EVIDENCE OF EMPLOYMENT.—In an action for personal injuries by a miner against the lessor and lessee of a mine, testimony of the miner that he was employed by the lessor company, without giving facts and circumstances, *held* insufficient to require submission of the question whether the lessor was operating the mine through the lessee as agent; the undisputed testimony being that he was employed by the lessee.

4. MASTER AND SERVANT—LIABILITY OF COAL-MINING COMPANIES.—Acts 1907, p. 163, § 1, making every "company," whether incorporated or not, liable for injuries to an employee from negligence of the employer or of any agent or employee, applies to an individual operating a coal mine. as well as to associations of persons.

5. MASTER AND SERVANT—INSTRUCTION.—In an action for injuries to a mine employee, an instruction submitting the issue whether plaintiff had been employed by both owner and lessee of the mine was not erroneous as to the lessee, though there was no evidence tending to establish liability of the owner.

6. NEGLIGENCE—INJURY AVOIDABLE NOTWITHSTANDING CONTRIBUTORY NEGLIGENCE.—In an action for injuries to the operator of a train of coal cars in a mine received in a collision with a detached car, an instruction to the effect that the operator could not recover if he was negligent in not discovering the car, was properly refused where it excluded the element of the foreman's duty to warn the operator of discovered peril.

7. TRIAL — INTRODUCTION OF REBUTTAL TESTIMONY — DISCRETION.—Permitting testimony not properly rebuttal to be introduced in rebuttal *held* discretionary with court.

Appeal from Franklin Circuit Court, Ozark District; *James Cochran,* Judge; reversed as to Western Coal & Mining Company, affirmed as to Wallace Harger.

*James B. McDonough,* for appellants.

1. The court erred in not directing a verdict for the Western Coal & Mining Company. The evidence failed to show the relation of master and servant between it and plaintiff. The company had no right to select the employee, or remove or discharge him, and no right to direct what work he should do nor the way and manner it should be done, the relation of master and servant did not exist between them and the Western Coal & Mining Company was not liable. 20 A. & E. Enc. L., p. 12, and cases cited; 26 Cyc. 965-6; Labatt on Master and Servant,

§§ 2, 18, 19-27. The relation is one of contract. 20 A. & E. Enc. L., p. 13.

Under the lease Wallace Harger was an independent contractor as a matter of law. 53 Ark. 503; 105 *Id.* 477; 54 *Id.* 424; 77 *Id.* 551; 118 *Id.* 561; 111 *Id.* 247; *Ib.* 91. The evidence is positive that Herbert Harger was not in the employ of the employ of the appellant mining company.

2. The fellow-servant doctrine has not been destroyed as to individuals operating coal mines. Wallace Harger is an individual and not a corporation, and he alone operated the mine at the time of the accident as an independent contractor. He employed appellee, Herbert Harger, and paid his wages. The mining company had no dominion or control over Herbert. Act No. 69, Acts of 1907, did not make the mining company liable. See p. 163 of the act. The court erred in ruling that the word "company" used in that act referred to an individual and that the statute was valid and that the statute or act destroyed the fellow-servant doctrine as applied to an individual engaged in mining coal. 95 Ark. 560; 87 *Id.* 587; 94 *Id.* 27; 89 *Id.* 522. The act is invalid in so far as it applies to individuals. 92 *Id.* 502; 184 Pac. 567; 121 N. E. 215. A mine is not limited to a mere subterranean excavation or workings. 95 Pac. 53; 14 L. R. A. (N. S.) 1043. "Mine" includes a coal mine. 106 Pac. 452. See, also, 178 Pac. 57; 238 U. S. 56; L. R. A. 1915 E. 953; 89 Ark. 522; 222 U. S. 251. There exists no power under the law to make an arbitrary, unjust and unreasonable classification as here. 127 U. S. 205; 170 *Id.* 283; 6 L. R. A. 308; 175 U. S. 348; 49 Ark. 325; 183 U. S. 79; 165 *Id.* 150; 32 N. E. 624; 83 Am. St. 116; 48 L. R. A. 265. The statute as applied to Wallace Harger in the operation of a coal mine as an individual is invalid and that the fellow-servant law as it existed at common law is ni full force as to Wallace Harger, and the court should have given the requests for instructions by Wallace Harger.

3. It was error to permit counsel for plaintiff to read to the jury in his opening statement the answer of the mining company. 104 Ark. 1, 542; 154 Pac. 159; 86 S. W. 65; 154 *Id.* 1070.

4. It was error to refuse to permit counsel to withdraw the separate answer of the mining company. 64 Ark. 253; 70 *Id.* 170.

5. It was error to permit counsel for plaintiff to state to the jury what was done after the accident and the statements made by Sam Young. 105 Ark. 247; 111 *Id.* 337; 115 *Id.* 515; 125 *Id.* 186.

6. It was error to permit the introduction of the evidence of Jackson and Shipley. 116 Ark. 125.

7. The court erred in giving plaintiff's instructions and refusing those asked by defendants. 87 Ark. 243; 82 *Id.* 511; 55 *Id.* 510; 58 *Id.* 157; 87 *Id.* 576; 135 *Id.* 330. It was error to refuse No. 10 asked by defendants. 57 Ark. 503; 108 *Id.* 377; 116 *Id.* 56; 105 *Id.* 526; 102 *Id.* 640; 90 *Id.* 387.

8. It was error to refuse instruction No. 13. Under the statutes of Arkansas the foreman or superintendent or person in control is not liable unless the injury is due to his personal negligence. Kirby's Digest, §§ 5350-2; 5337 to 5357.

9. It was error to give instruction No. 2. 88 Ark. 454. Also error to give No. 3, defining negligence; it is abstract and misleading. 78 Ark. 87. There was reversible error in the other intsructions. See cases *supra,* and a case exactly in point, 174 Pac. 1139. A peremptory instruction should have been given for the mining company. Under the provisions of the lease the lessees are independent contractors and the lessor was not liable for any injury resulting from any negligence of the lessees in connection with the operation of the mine. 77 Ark. 551; 55 *Id.* 510; 3 Elliott on Railroads, § 1063, p. 1586; 21 Okla. 266; 1 Thompson on Negl., p. 631; 34 Okla. 424; 6 Ga. App. 147; 68 Ill. App. 219; 95 N. Y. Supp. 833; 33 Wash. 591; 14 R. C. L. 67-71; 65 *Id.* 455; 76 Me. 100; 80

Cal. (*Smith* v. *Belshaw*); 17 L. R. A. (N. S.). 370; 45 *Id.* 930; 43 Am. Rep. 456. If the contract is in writing and unambiguous, its construction is a question for the court and not the jury. 36 Okla. 358; 8 L. R. A. (N. S.) 896; 145 Cal. 96; 14 R. C. L., p. 78, § 16; 28 Ark. 550; 103 *Id.* 341. In view of these authorities a peremptory instruction should have been given.

*Pryor & Miles,* for appellant.

*Evans & Evans,* for appellee.

The verdict is sustained by the evidence and there is no error in the instructions. 136 Ark. 467; *Ark. Land Co.* v. *Fitzhugh,* 143 Ark. 122; 1 McMullen (S. C.) 385; 243 U. S. 188; 49 So. Rep. 395; 160 Ala. 644. In view of the testimony a directed verdict for defendant was properly refused, and the judgment is right on the whole case. See 135 Ark. 117, a case on all-fours with this.

McCULLOCH, C. J. Appellee, Herbert Harger, instituted this action in the circuit court of Franklin County against appellants Wallace Harger and the Western Coal & Mining Company, to recover compensation for injuries sustained while he was working in a coal mine as an employee of appellants.

It is alleged in the complaint that appellee was an employee of both of the appellants and certain acts of negligence are set forth in the complaint as having been committed by other employees of appellants and that the personal injuries received by appellee resulted from said acts of negligence. In the answer filed by appellants the Western Coal & Mining Company denied that appellee was its employee or that it was operating the mine at the time of appellee's injury. The answer of each of the appellants also contained a denial with respect to the alleged acts of negligence and pleaded contributory negligence on the part of appellee and the assumption of risk on his part. The trial of the issues resulted in a verdict in favor of appellee against both of the appellants for the recovery of the sum of $2,187.50.

Appellee's injuries were received on April 21, 1919, while he was working in a coal mine near Denning. The mine was owned and formerly operated by the Western Coal & Mining Company, a corporation, but at the time of appellee's injuries it was being operated by appellant Wallace Harger under a written contract between him and the Western Coal & Mining Company. The character of this contract will be shown later.

Appellee was employed as the operator of an electric motor used in hauling a train of coal cars from what is called the "parting" to the foot of the shaft and then hauling the empties back from the shaft to the "parting," the distance between those two points being about 2,500 feet. The cars loaded with coal were made up into a train at the "parting" and appellee would connect the motor car to the train and haul it to the foot of the shaft for the coal to be hoisted to the surface and then the empty cars would be made up into a train and hauled back to the "parting." This work was, of course, all under ground, and the track between the two points was uneven—uphill and down. The coal cars in the train were coupled together by a crude appliance called a gooseneck, and on the ccasion when appellee was injured the rear car became disconnected after the train left the "parting" en route to the foot of the shaft. This was caused by the coupling or gooseneck being too straight, and the rear car loaded with coal was allowed to become disconnected from the train. The train on this occasion was composed of seventeen cars, and appellee, without knowledge that the rear car had become disconnected, hauled the remainder of the cars to the foot of the shaft for the coal to be hoisted to the surface. The train arrived at the foot of the shaft just before noon, and one-half of the cars were hoisted before the dinner hour and the other half after appellee had returned from his meal. The trainload of empties was made up and turned over to appellee, and he proceeded on his journey hauling the train back to the "parting," and when he had proceeded about 1,500 feet his train encountered the coal car on the track and col-

lided with it. Appellee sustained serious personal injuries in the collision.

Five separate acts of negligence on the part of servants of appellants are alleged in the complaint as causing or contributing to appellee's injuries: First, that there was negligence in permitting the gooseneck or coupling attached to the rear car to become and remain straightened out so that it would not hold its connection in the train; second, that Sam Young, the pit boss and mine foreman, was guilty of negligence in failing to notify appellee that one of the cars had been disconnected and was standing on the track, it being alleged that Young saw the car standing on the track and failed to notify appellee when he started on the return trip with the train of empties; third, that the brake on the motor had gotten out of repair so that the train could not be stopped by means of the brake when danger was discovered; fourth, that the finger-board on the motor had become defective and out of repair, so that the electric current could not be cut off and the train thereby stopped when danger was discovered; and fifth, that there were no lights along the track so as to enable the operator of the motor car to discover obstacles on the track, it being alleged that lights had been provided, but that at the time of this occurrence the sockets were empty and had no lamps in them.

Each of these alleged acts of negligence were, as before stated, denied by appellants in their answer, and they also alleged and introduced evidence tending to prove that it was the duty of appellee himself to check the number of cars in the train when it started on the trip from the "parting" and also when he was ready to return with the empties leaving the foot of the shaft.

It is contended by learned counsel for appellee that there is no bill of exceptions in the transcript, or rather that what purports to be the bill of exceptions is so confused and disconnected that the certificate of the trial judge appears in such a way that there is no certainty about the authentication of the bill of exceptions as the

one filed with the clerk. Time was allowed for filing the bill of exceptions, and during that time it was prepared and the oral proceedings were certified by the court stenographer. There appears on one of the pages a blank certificate for the signature of the trial judge, but it is unsigned, and on the next page there appears the certificate of the stenographer and also an agreement of counsel for the respective parties to sign certifying that the foregoing bill of exceptions was correct, but this certificate was signed only by counsel for appellant and not by counsel for appellee. On this page there also appears the filing mark of the clerk showing that the bill of exceptions was filed on December 18, 1919. On several succeeding pages of the transcript there appears the instructions of the court and certain other proceedings, and finally there is attached the certificate of the judge properly signed and dated December 17, 1919, in which the judge certified that "the above and foregoing is a true and perfect bill of exceptions in this cause." We think that, while the bill of exceptions is in somewhat confused shape, there is sufficient to show that everything preceding the signature of the judge was treated as a part of the bill of exceptions, and that it was properly certified. The fact that the filing certificate of the clerk appears several pages ahead of the certificate of the judge is not sufficient to show conclusively that the purported bill of exceptions ended at the place where the clerk affixed his filing certificate.

The first assignment of error urged here is that the evidence is not legally sufficient to sustain a verdict against appellant Western Coal & Mining Company, in that it is not shown that said appellant was operating the mine at the time of appellee's injury. It is insisted that according to the undisputed evidence the Western Coal & Mining Company had leased the mine to its co-appellant, Wallace Harger, and that appellee was employed by the latter and that the Western Coal & Mining Company had no connection whatever with his employment or service. After carefully considering the evi-

dence, we think that this contention is sound and that the court erred in not giving a peremptory instruction in favor of the Western Coal & Mining Company, withdrawing the issue as to its liability from the jury.

The Western Coal & Mining Company owned the mine property, and had been operating it for a number of years, but entered into a written contract with Wallace Harger on February 16, 1915, whereby it was agreed that the mine should be leased to Harger to be operated as a coal mine, and the testimony is clear and undisputed that the mine was being operated by Harger under said contract at the time appellee was injured. According to the express terms of this contract, the mine was leased by the Western Coal & Mining Company to Wallace Harger and one Craig (Harger having subsequently succeeded to the rights of Craig), and the lessees undertook to operate the mine and to sell the coal mined therefrom to the Western Coal & Mining Company at a stipulated price on board cars at the mine. Under this contract the lessees agreed "to operate and keep in proper repair, all of the mining buildings, railway side tracks, mine workings and machinery, fans, pumps, pit cars and all other implements, equipment and tools as will appear on an inventory of such property attached hereto and made a part hereof at the signing of this agreement; to remove all mine rails and ties from entries and rooms exhausted and suspended during their operations on the premises, and at the termination of this contract to leave the property in as good condition as it was when received, less the depreciation of actual use, or, upon the failure of said first parties to return any portion of such machinery, personal property, etc., said first parties agree to pay for same at a reasonable price to be agreed upon, and no buildings, machinery, fans, boilers, pumps, pit cars or other personal property belonging to said mine shall be placed upon or taken from the premises of the second party, without the consent in writing of its representative." It was also agreed that the lessees should protect the lessor from any liability by reason of injury to persons or property and to "provide

such personal injury liability insurance as will indemnify and be satisfactory to the party of the second part.''

The contract is, on its face, one for the leasing of the mine to be independently operated by Harger. There is nothing in the contract from which there can be gathered any intention to make the lessor responsible for the conduct of the lessees in the operation of the mine. The possession of the mine was completely surrendered to the lessee, and the agreement was that the latter should keep the same in repair. The only right reserved to the lessor was the right to send inspectors to see that the property was cared for and not injured. The reservation of this right did not make the lessor liable for the failure of the lessee to keep the premises in good repair, for one of the essentials of a contract to have work done independently is that the work is to be done in the course of an independent occupation according to the methods and under the direction of the contractor himself and that he represents the will of the owner only as to the result of the work done. *J. W. Wheeler & Co.* v. *Fitzpatrick,* 135 Ark. 117. In the contract the lessor was exonerated from any duty to keep the premises in repair, and this duty was cast upon the lessees. In this respect the contract does not resemble the one dealt with in the case of *Collison* v. *Curtner,* 141 Ark. 122. Nor does the fact that the lessor, in his contract with the lessee, exacted of the latter an undertaking ''to provide such personal injury liability insurance as will indemnify and be satisfactory,'' create responsibility on the part of the lessor for the negligent acts or omissions of the lessee. Appellant coal company had the right to require indemnity against all loss under any contingency without committing itself to an obligation to become responsible for any injuries to persons or property. Outside of the contract itself, there is no substantial evidence that the relation of the parties was other than that created by the express terms of the contract itself. Each of the circumstances introduced in evidence were entirely consistent with the relations of lessor and lessee created by the contract. The lessor was to purchase the output

of the mine at a stipulated price, and the proof shows that it advanced money to the lessee on the pay roll and that Harger, the lessee, put himself on the pay roll covered by such advances. This circumstance is without any probative force to establish the fact that appellant Harger was a mere employee or agent of the coal company in the operation of the mine. It had the right to make advances under its purchases without the transaction being treated as a departure from the terms of the contract and as a change of its nature. The only other circumstance relied on is that the printed matter originally used by the coal company and left at its office when the property was turned over to the lessee was used by appellant Harger in making out his pay roll. Sufficient importance can not be attached to this circumstance to make it constitute substantive proof that the mine was being operated by Harger as the agent of the coal company.

It is contended that the testimony of appellee himself was sufficient to warrant the submission of the question as to whether or not the coal company was operating the mine and that appellant Harger was conducting the operations as the agent of the company. Appellee in his testimony made the statement that he was employed by the company, but this was a mere statement of a conclusion as he gave no facts or circumstances to base it on. The undisputed evidence was that appellant Harger was in charge of the mine and employed the men therein. Appellee did not testify that he was employed by any one acting for the company, and his bare statement that he was employed by the company amounted to nothing more than a conclusion of his without any evidence to support it.

In holding as we do that no liability is established against appellant coal company, the judgment must be reversed as to that appellant. Other assignments of error relating solely to the liability of the company are thus eliminated from the discussion, and the further consideration of the court is confined to the questions regarding the liability of appellant Harger.

According to the undisputed testimony, Harger, as lessee of the mine, was operating it for himself and not associated with any other person or corporation.

The first question presented with respect to his liability arises upon the interpretation of the statute enacted by the General Assembly of 1907 (Acts of 1907, p. 163), which reads as follows:

"Section 1. That hereafter all railroad companies operating within this State, whether incorporated or not, and all corporations of every kind and character, and every company, whether incorporated or not, engaged in the mining of coal, who may employ agents, servants or employees, such agents, servants, or employees being in the exercise of due care, shall be liable to respond in damages for injuries or death sustained by any such agent, employee or servant, resulting from the careless omission of duty or negligence of such employer, or which may result from the carelessness, omission of duty or negligence of any other agent, servant or employee of the said employer, in the same manner and to the same extent as if the carelessness, omission of duty or negligence causing the injury or death was that of the employer."

Does this statute apply to the operation of a coal mine by an individual? We have upheld the validity of this statute as applicable to railroad companies, and in the case of *Ozark Lumber Co.* v. *Biddie,* 87 Ark. 587, we upheld that portion of it which relates entirely to corporations "of every kind and character." The succeeding part of the statute applies to "every company, whether incorporated or not, engaged in the mining of coal, etc." The plain purpose of the framers of the statute was to make its provisions applicable to those engaged in the mining of coal and the only question is whether or not the use of the word "company" is broad enough to include an individual engaged in that business. It being perfectly clear from the language used that the Legislature intended to regulate the business of coal mining, we should and ought to carry out that intention and give the language used a liberal interpretation in defining the

word "company," and we think that that word used in this connection was intended to include individuals and is not limited to associations of persons. The strictest interpretation of the word would confine its application to corporations alone, but it is obvious that the Legislature did not mean it in that sense, for they had already provided for the regulation of all corporations, irrespective of the kind of business conducted. If we depart from this strict construction; there is no reason discoverable why individuals could not come within the term, as well as association of individuals, such as partnerships. There is authority for this interpretation and we think it is a correct view of the matter.

In the case of *Atlantic Coast Line R. Co.* v. *State,* 135 Ga. 545, 32 L. R. A. (N. S.) 20, the court held that "the word 'company' does not necessarily mean a corporation, but may mean a firm, partnership or individual." There was a like holding in *Elfand* v. *Southern Ry. Co.,* 146 N. C. 135; *Keystone Pub. Co.* v. *Hill Dryer Co.,* 105 N. Y. Supp. 894; *Singer Mfg. Co.* v. *Wright,* 97 Ga. 114.

This question has never been before us for decision until the present case was presented, and the cases referred to on the brief of appellants did not go into this question, but, on the contrary, were decisive of other phases of the statute. We are of the opinion, therefore, that the statute applies to the operation of a coal mine by an individual, and that it abolished the common-law doctrine as to liability for acts of fellow-servants and made the operator of the mine responsible to an employee for the negligent acts of his fellow-servants.

The instructions given by the court were, we think, according to the well-settled principles of law with respect to relations between master and servant and the duties of one to the other. Those instructions are numerous, and the assignments of error in regard to them are equally numerous, and a discussion of those matters is unnecessary as no new question is presented.

It is contended that the first instruction was erroneous because it submitted to the jury the issue of the employment of appellee by both of the appellants. This assignment raises the question of the legal sufficiency of the evidence to sustain the verdict against the coal company, and that has already been disposed of in this opinion, but the elimination of the coal company from consideration does not make the instruction erroneous as to the other appellant.

Error of the court is assigned in refusing to give the following instruction requested by appellant: "If it was the duty of the plaintiff to count the cars when he started with a trip, or if it was his duty to ascertain how many cars he had in the trip when he started, and if it was his duty also to count or ascertain the number of cars at the completion of the trip so as to know whether any cars were left along the haulage way, then and in that event the plaintiff did not have the right to rely upon notice from the foreman, Sam Young. If the above are the facts, the defendant did not owe to the plaintiff the duty to warn plaintiff that he had left a car on the track, and in that event the jury will find for the defendants on the alleged negligence of defendant in failing to give notice of the presence of the car on the track."

This instruction was erroneous in telling the jury that appellee should be denied the right to recover because of his own failure to ascertain the fact that one of the cars had been lost on the trip, notwithstanding the actual knowledge on the part of the foreman that the car was standing on the track in a dangerous position and his failure to notify appellee of that fact.

There is abundant testimony that it was the affirmative duty of the pit boss to notify the men of any dangerous conditions existing, and the evidence shows that Young, the foreman, had actual knowledge of the presence of the car and failed to notify appellee as he started on his return trip. Even though appellee failed to discharge the duty of counting the cars before he started

on the return trip, yet the negligent failure of Young to notify him of the presence of the lost car on the track which created the danger was the intervening and proximate cause of the injury. It was a case of peril actually discovered by the representative of the employer, and his negligence in failing to guard against it or give warning concerning it was the proximate cause of the injury. This instruction was therefore incorrect in excluding that element from the consideration of the jury.

There are other assignments of error not of sufficient importance to consider. Several of them relate to matters to which no exceptions were saved, or which do not appear in the bill of exceptions. The question of permitting the appellee to introduce in rebuttal testimony which was not properly rebuttal testimony was a matter of discretion for the court, and we can not say that the court abused its discretion in that respect.

The judgment is therefore reversed, and the cause is dismissed as to the Western Coal & Mining Company, but as to appellant Wallace Harger the judgment is affirmed.