### ELDRIDGE v. McGEORGE.

### No. 11151.

Circuit Court of Appeals, Eighth Circuit.

Nov. 25, 1938.

Rehearing Denied Dec. 13, 1938.

---

[6] Central of Georgia Ry. Co. v. Perkerson, 112 Ga. 923, 38 S.E. 365, 53 L.R. A. 210; City of East Point v. Christian, 40 Ga.App. 81, 149 S.E. 50.

Sam Costen, of Memphis, Tenn. (C. C. Crabtree, of Memphis, Tenn., and J. A. Tellier, of Little Rock, Ark., on the brief), for appellant.

Fred A. Isgrig, of Little Rock, Ark. (Harry C. Robinson, of Little Rock, Ark., on the brief), for appellee.

Before STONE, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

WOODROUGH, Circuit Judge.

The plaintiff Eldridge suffered personal injuries while he was in the performance of his duties as a government sub-inspector upon certain revetment work being done un-der government contract by defendant Mc-George along the banks of the Mississippi river near Helena, Arkansas. He brought this action for damages for negligence against the contractor and on the trial of the case the jury returned a verdict for the defendant. The plaintiff appeals from the judgment of dismissal entered pursuant to the verdict. Federal jurisdiction on the ground of diversity of citizenship existed and the law applicable is that of Arkansas.

It was alleged in the complaint:

"That on the 23 day of October, 1936, the defendant, Wallace P. McGeorge, entered into a contract with the United States of America, under the terms of which he was to do certain construction work upon the Mississippi River along its banks near Helena, Arkansas. At the time of the injuries received by plaintiff, hereinafter alleged, plaintiff was employed by the United States of America as sub-inspector of revetment work being done along the banks of the Mississippi River, and at the time of the injuries received by plaintiff as hereinafter alleged he was engaged in his duties as said sub-inspector, and was inspecting the work being done by defendant on the banks of the Mississippi River near Helena, Arkansas. The said inspection was agreed to and understood by the defendant and constituted part of the agreement and understanding in his said contract with the United States of America for the doing of said construction work."

"That on November 8, 1936, he was injured by reason of the carelessness and negligence of defendant in the following manner: The defendant, his agents and employees, were engaged at the time and place aforesaid in the work of hauling rock upon large trucks and dumping same on the bank of the Mississippi River. The method used by defendant in approaching the said place and in dumping said rock was that the truck followed a well-beaten and well defined path or rut along said river and between the river and the St. Francis Levee until it reached a point some distance from the place necessary to dump said rock, and then turned towards said levee and away from said river until it reached a point where it would back towards and down said river to the point necessary to be reached to dump said rock. At the time of the injuries received as hereinafter alleged, a truck either owned or leased by defendant and operated by one Lonnie D. Wolfe, an employee of defendant heavily loaded with * * * yards

of rock, weighing approximately 2500 pounds per yard, approached said point where the turn was made towards the said levee, where the said road for the backing said truck was located. Thereupon, said Wolfe began backing said truck towards and down the bank of said river. At said time, plaintiff, with others, was standing by a fire built some distance from the well-defined beaten ruts, path and road used by defendant for backing to the point of said unloading of rock, and while in the exercise of due care for his own safety, was carelessly and negligently struck, knocked down and run over by said backing truck, from which the bones in his legs and body were broken, and he received permanent injuries * * *."

The complaint detailed particulars of negligence in the handling of the truck and alleged that: "At the time of said injury plaintiff was in the exercise of due care for his own safety, and his position was some distance away from and perfectly safe from trucks backing down said beaten road and ruts provided for that purpose."

The answer of the defendant McGeorge contained a general denial. It admitted that at the time plaintiff was injured he was an employee of the United States government and his duty consisted in inspecting the work being done by defendant. It contained pleas of contributory negligence on the part of the plaintiff and of unavoidable accident without negligence. By amendment of the answer made prior to the trial, defendant pleaded as a further defense that plaintiff's injury "was due entirely to the neglect of the servant of an independent contractor and for which he is not liable." There was no reply and the allegations of the answer as amended stood denied.

The plaintiff testified that on the morning of the accident he was inspecting the placing of rock on the river edge and had been working at the lower end of the job while Mr. Mark Richardson, another inspector, was working at the upper end. Plaintiff said:

"It was customary for inspectors to consult with each other with reference to various parts of the work, and shortly before ten o'clock Mr. Richardson came down to where I was working and asked me to look over his end of the job with him. As I recall we walked from the river's edge up to the top of the bank and followed the top of the bank up to where a fire had been built. Between this fire and the top of the bank there was a roadway which was used by all of the trucks unloading in this particular area for backing down to the river's edge and unloading. This roadway followed the top of the bank to a point about seventy-five or one-hundred feet above the place where the fire was built. There the road turned sharp up the bank, forming a Y, and the road coming down within about seven or eight feet of the fire. This was the only road for trucks in that area, and is the road that all of them traveled."

"I stopped with my back to the fire, facing northeast in the direction of the unloading area, where I was going. I was standing about half-way between the fire and road, and Richardson was standing southeast of me and I do not know in which direction he was facing, because he was to my back. I had stopped there only a minute or so when I felt something hit me and heard people hollering and at the same time the truck had me down on the ground on my back and I was run over."

There was testimony for plaintiff that there was a beaten path or road which was then being used by the trucks backing down to the dumping place and that there were well defined ruts in which the trucks moved, but that the truck driven by Lonnie Wolfe did not follow in the defined ruts but ran out of the roadway towards the fire where plaintiff stood, a distance of approximately three feet.

Plaintiff offered in evidence the contract between the defendant contractor and the government fixing the terms and conditions upon which the defendant had undertaken and was performing the work. Among other things, the contract provided that the work should be "conducted under the general contracting officer (of the United States[1]) who will maintain an adequate inspection force on the work to make the necessary measurements and to enforce strict compliance with the work"; "the inspectors shall at all times be given access to all parts of the work"; "the contractor shall furnish promptly without additional charge all reasonable facilities, labor and materials necessary for the safe and convenient inspection and test that may be required by the inspectors"; "the contractor shall without additional expense to the Government * * * be responsible for all damages to persons or property that occur as a result

---

[1] Supplied.

of his fault or negligence in connection with the prosecution of the work."

"Paragraph, 25: * * * He shall conduct the work with due regard to safety against accidents to his employees and to the employees of the United States supervising the work, all in conformity with current safety engineering, practices as set forth in the Manual of Accident Prevention in Construction published by the Associated General Contractors of America and the publications of the National Safety Council, or as required by State or municipal law regulations or ordinances."

The trial court excluded the contract and exception to the ruling was preserved by the plaintiff.

The defendant's testimony tended to rebut the plaintiff's claim that the truck driver, Lonnie Wolfe, had backed the truck which struck the plaintiff off of any "well defined beaten ruts, path and road used for backing to the point of said unloading of rock." There was testimony for defendant that there was not "just one track for trucks to go through there, but all had to go through that space of twelve or fourteen feet between the fire where plaintiff was standing and the river edge where the rock was being dumped," and that the wheels of the truck in question moved very close to the tracks made by other trucks ahead of it. There was also testimony that the plaintiff was standing in that comparatively narrow truck lane facing toward the fire and away from the lane, and that he moved out of his position just before he was struck. Defendant claimed and still insists that the physical facts establish contributory negligence of the plaintiff in putting himself in a place of danger from the work and failing to look out for his safety, but on careful consideration of the whole evidence we think the question whether there was negligence on the part of the truck driver which was the proximate cause of the injury, and the question whether there was negligence on the part of plaintiff which proximately contributed thereto, were for the jury.

The charge of the court submitted both questions to the jury. It also submitted the issue of independent contractor raised by the amendment to the answer. The court instructed that defendant had "set out as a defense that the truck driver, Lonnie Wolfe, was not the employee of McGeorge, but was the employee of Callan who was an independent contractor" and that "the first duty of the plaintiff is to prove by a preponderance of the testimony that Lonnie Wolfe was negligent and that Lonnie Wolfe was the servant of the defendant W. P. McGeorge."

As the jury's verdict in favor of the defendant was a general verdict upon all the issues submitted to it, the verdict must be deemed to include a finding for defendant and against the plaintiff on the issue of independent contractor.

Some of the points argued here under sufficient assignments of error are: (1) That the instruction given by the court covering the defense of independent contractor was prejudicially erroneous; (2) that there was error in admitting the testimony of the witness Callan that he controlled the operation of the truck and the method and manner of driving it; (3) that the court erred in refusing to permit Callan to answer whether he carried liability insurance; (4) that the court erred in sustaining objection to the question to Callan, "What is your financial responsibility?" (5) that the court erred in refusing to receive in evidence the contract between the government and McGeorge offered by plaintiff; (6) that the defense of independent contractor was not open to the defendant as against the plaintiff, a government inspector, because of defendant's contract with the government.

It appears from the evidence relating particularly to the defense of independent contractor that there were about fifteen trucks employed in hauling the rock and spall used on the revetment work from the railroad side tracks to the river bank. None of the trucks belonged to the contractor. They were driven by their owners or by drivers selected by the owners. They were loaded and dumped under the supervision and direction of defendant's foremen. The defendant's men cleared off and maintained the roadway for the trucks in and out alongside the river. In answer to the question, "You never told a man to drive and what route they should take, or what road they should take from the cars to the river bank?", defendant's general foreman answered, "Except there were two roads in from the river bank, over the levee, and sometimes one road was better than the other and they would take the best road over to the bank."

"Q. Did you have anything to do with that or was that just the driver? A. We maintained the roads.

"Q. You maintained the roads in and out? A. Yes sir."

The general foreman also said that defendant kept a check on the trucks in order to dock them if they were broken down and "to see that they would keep moving." Defendant kept a man at the levee to keep the trucks from running into each other and to speed them up and for safety. If the trucks got "balled up" sometimes one of the foremen and different ones would straighten them out. At the river's edge defendant had a crew of men engaged under the direction of a foreman in placing the rock and spall as it was hauled and dumped there under the foreman's direction. Although defendant's superintendent and general foreman and the foreman at the river bank testified that the defendant had nothing to do with the operation of the trucks nor the drivers, it appeared from their testimony that "if the driver couldn't drive properly we would have the truck owner get a new driver. We would lay the truck off until he got somebody."

The truck that collided with plaintiff belonged to V. C. Callan, who owned two trucks which he had brought to the work from his home in Tennessee. He had driven one of them himself, and had hired Lonnie Wolfe, who lived in the same community, to drive the other. Mr. Callan contracted orally with defendant's superintendent for the use on the job of the truck driven by Lonnie Wolfe. The terms were $1.20 per hour for truck and driver. "The government fixed the wage of forty cents per hour for the driver and under government regulations the driver had to be paid separately, so Mr. McGeorge paid the driver forty cents an hour direct and Mr. Callan 80 cents for the truck." Mr. Callan supplied gas and oil and kept the truck in repair at his own charge. He had "never done that particular kind of work before he started handling riff-raff rock and dumping it down there on the Helena job." He testified that in driving the truck he and Lonnie Wolfe "acted just like any other drivers and took their orders where they were to dump their stone and that sort of business from the defendant's boss on the job." There is no testimony that he gave Lonnie Wolfe any particular direction about driving the truck.

Turning to the court's instructions, the plaintiff timely excepted to and now complains of the instruction requested and given by the court as follows: "You are instructed that an independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work; therefore if you find from the evidence in this case that the defendant exercised no control over V. C. Callan or the driver Lonnie Wolfe as to the methods and manner of doing work, but only exercised such authority and control as to the result of the work, then Callan would be an independent contractor, Lonnie Wolfe would be the employe of an independent contractor, and the defendant would not be liable in this case."

The point argued against the instructions so given is that it did not afford the jury the proper measure to test the question whether the truck driver Wolfe was defendant's servant or the truck owner Callan's servant in respect to responsibility for the act of backing the truck against the plaintiff. The instruction made the question whether the defendant did or did not exercise control over Callan or Wolfe as to the methods and manner of doing the trucking work the test of liability. This is especially clear in the latter part of the instruction. The contention for the plaintiff is that the test should have been whether or not it appeared from the relations of the parties and the whole course of the work and the control of it and all the circumstances in evidence that the contractor had reserved the power or the right to control Lonnie Wolfe at the time and place of collision.

The evidence indicates that when the trucks hauling the stone were strung out between the loading place and the revetment work, very little actual control over the drivers would be overtly manifested, beyond the contractor's checking them up to dock them if they were broken down and his seeing to it that they were kept moving. They were working by the hour at the contractor's cost and he would hardly permit them to waste time. But when they were on the work itself, where the paving gang was placing the material and the heavy loaded trucks were turning and backing and dumping their loads, the work of the driver undoubtedly had to be and was more closely co-ordinated and directed. And yet at the moment of the backing operation at the spot where plaintiff was hurt no one was calling out any direction or overtly manifesting any control over the driver.

Under such circumstances, it was necessary to submit the issue upon the defense of

840

independent contractor for the determination of the jury in such a way as to apprise the jury how to direct their inquiry, and no sound verdict could be reached unless a right measure to test responsibility of the defendant for the alleged negligence of the driver was given. The jury's duty was to consider not only the act of Lonnie Wolfe at the very instant of the act or neglect, but also to determine from the whole course of the work and all the circumstances who then had the right to direct and control him in the performance of the causal act or omission. As no control over Wolfe was then being overtly manifested by any one, the direction to the jury to acquit defendant if "defendant exercised no control over V. C. Callan or the driver Lonnie Wolfe ás to the methods and manner of doing the work, but only exercised such authority and control as to the result of the work," failed to furnish the jury a sufficient and proper guide to determine the independent contractor issue. The instruction was necessarily prejudicial to plaintiff because no one was exercising any overt or manifested control over the driver Lonnie Wolfe as to the manner and method of doing his work at the time of the injury, and if such absence of the exercise of control by defendant was the criterion as indicated in the instruction, the defendant could not be liable.

Defendant has argued that the words of the first part of the instruction are taken verbatim from standard texts and have been recognized by Arkansas courts as correct abstract declaration of law, and that is true. But in this case it was not immediately obvious who had "control" over Lonnie Wolfe at the time of the accident. Undoubtedly someone then had the right to direct him. It was necessary for the jury to weigh all the circumstances in evidence to determine who the person was, whether McGeorge or Callan. Callan selected him and Callan was the owner of the truck he was driving. But McGeorge was carrying on the work as a whole and was paying by the hour and the detailed incidents of the work as it was carried on were all relevant to the issue. The abstract declaration made by the court was insufficient to inform the jury upon the issue it was required to determine, and the concluding part of the instruction practically making the absence of the exercise of control by defendant the criterion, omitting reference to his right to such control, was incorrect. See Dubisson & Goodrich v. McMillin, 163 Ark. 186, 259 S.W. 400.

Many cases have been considered by the supreme court of Arkansas in which the law applicable to the defense of independent contractor has been fully settled. They leave no doubt but that the trial court was correct in its determination to submit the issue arising upon that defense from the circumstances in evidence to the consideration of the jury. Meyer v. Moore, 195 Ark. 1114, 115 S.W.2d 1087; Humphries v. Kendall, 195 Ark. 45, 111 S.W.2d 492; Hobbs-Western Co. v. Carmical, 192 Ark. 59, 91 S.W.2d 605; Black Springs Lumber Co. v. Palmer, 192 Ark. 1032, 96 S.W.2d 469; Delamar & Allison v. Ward, 184 Ark. 82, 41 S.W.2d 760; Mississippi River Fuel Corp. v. Young, 188 Ark. 575, 67 S.W.2d 581; Ellis & Lewis v. Warner, 180 Ark. 53, 20 S.W.2d 320; Terry Dairy Co. v. Parker, 144 Ark. 401, 223 S.W. 6; Arkansas Natural Gas Co. v. Miller, 105 Ark. 477, 152 S. W. 147; Ice Service Co. v. Forbess, 180 Ark. 253, 21 S.W.2d 411. They are equally clear to the point that in order to reach a conclusion as to the relationship it is necessary to take into account all the circumstances in proof to determine the right to direct and control the servant in the performance of the causal act.

In Ice Service Co. v. Forbess, 180 Ark. 253, 21 S.W.2d 411–413, the court said: "The conclusion as to the relationship must be drawn from all the circumstances in proof, and, where there is any substantial evidence tending to show that the right of control over the manner of doing the work was reserved, it became a question for the jury whether or not the relation was that of master and servant." Mississippi River Fuel Corp. v. Morris, 183 Ark. 207, 35 S.W. 2d 607, 610; St. Louis-S. F. R. Co. v. Conly, 160 Ark. 592, 255 S.W. 308; St. Louis, I. M. & S. Ry. Co. v. Cooper, 111 Ark. 91, 163 S.W. 160.

As we think that the instruction was inapplicable to the particular circumstances as we have pointed them out, and was therefore insufficient and erroneous, we sustain the assignment of error against it. Dubisson & Goodrich v. McMillin, 163 Ark. 186, 259 S.W. 400; Wisconsin & Arkansas Lumber Co. v. McCloud, 168 Ark. 352, 270 S.W. 599.

(2) When the witness Callan was on the stand he was permitted over the objection of plaintiff to say in reply to the question who controlled the operation of the truck and the method and manner of driving it and handling it, "I did". It is here

contended that the question so answered by Mr. Callan was an ultimate question for the jury and that Mr. Callan's answer was a conclusion merely and that he should not have been permitted to give what amounted to an opinion. We consider this contention in connection with the instruction above discussed. The effect of the instruction was that if the jury found defendant exercised no control over Callan or Wolfe as to the methods and manner of doing their work, the plaintiff could not recover. As Callan was permitted to say that he controlled the method and manner of handling the truck, the jury would be justified under the instruction to decide the issue wholly on Callan's mere conclusion. We are of the opinion that there was prejudicial error in overruling plaintiff's objection against permitting Mr. Callan to answer the question propounded to him.

(3) Counsel for plaintiff inquired of the defendant's witness Callan, "Did you carry any liability insurance for your protection?". The trial court sustained objection and the witness was not allowed to answer. Plaintiff's counsel pointed out to the court that the testimony sought to be elicited was directed to the issue whether Callan was an independent contractor. The ruling is assigned as error, and we think that the assignment must be sustained under the two decisions in Arkansas relied upon. Delamar & Allison v. Ward, 184 Ark. 82, 41 S.W.2d 760; Pollock Stores Co. v. Chatwell, 192 Ark. 83, 90 S.W.2d 213. See Jones & Harrington v. Scott, 116 Ark. 108, 172 S. W. 840, 842; Harger v. Harger, 144 Ark. 375, 222 S.W. 736.

(4) Callan was asked, "What is your financial responsibility?", and error is assigned on the court's refusal to permit an answer. We are not referred to any Arkansas decision directly in point on this assignment, but many cases are cited in which the courts have commented on the financial irresponsibility of one claimed to be an independent contractor as a relevant circumstance. We think that where, as in this case, the answer to the question at issue had

to be deduced from all the circumstances, the question should have been answered. Lehigh Valley Coal Co. v. Yensavage, 2 Cir., 218 F. 547, 552; Fehrenbacher v. Oakesdale Copper Mining Co., 65 Wash. 134, 117 P. 870, 871; Nelson v. American Cement Plaster Co., 84 Kan. 797, 115 P. 578, 581; Wallace v. Southern Cotton Oil Co., 91 Tex. 18, 40 S.W. 399, 401. See New Union Coal Co. v. Sult, 172 Ark. 753, 290 S.W. 580, 583; W. H. Moore Lumber Co. v. Starrett, 170 Ark. 92, 279 S.W. 4, 8.

(5, 6) It is apparent from the statement of the case made at the outset that the contract between the defendant McGeorge and the government has direct bearing upon the question of McGeorge's responsibility on account of any failure to conduct the revetment work with due regard to safety against accidents to the plaintiff whose presence on the work as an employee of the United States was contemplated in the contract. But the plaintiff did not plead any terms of the contract in his complaint except those terms which accorded him the right to be upon the work and perform his duties as inspector. When the contract was offered by the plaintiff, plaintiff directed the court's attention particularly to Paragraph 25, above set forth, and the court was of opinion that the introduction of the contract at the close of the plaintiff's case would bring new issues into the case and so the contract was excluded. It appears improbable that proper foundation for consideration of the contract in respect of pleading or proof will be lacking upon another trial of the case, and we deem it unnecessary to resolve the questions concerning exclusion of the contract raised and argued on this appeal. For the errors which we have found, the judgment appealed from is reversed and the case remanded for new trial.

STONE, Circuit Judge (concurring).

I concur in the opinion of Judge WOODROUGH except that I think the charge as to independent contractor given by the Court was not error.